Gregory T. AMBUS, Plaintiff and Appellant,

v.

UTAH STATE BOARD OF EDUCATION; the Estate of James R. Moss, deceased, individually and as Superintendent of the Utah State Board of Education; Jay B. Taggart, Neola Brown, Keith T. Checketts, John M.R. Covey, Ruth Hardy Funk, Darlene Hutchison, Frances Hatch Merrill, M. Richard Maxfield, Donald G. Christensen, Margaret R. Nelson, Valerie J. Kenson, and John Millecam, individually and as members of the Utah State Board of Education; Gail L. Mladejovsky, Marilyn Wenzel, Jeanine T. Bosch, John L. Jaussi, and Paul J. Rasband, individually and as members of the Professional Practices Advisory Commission; and Roger C. Mouritsen, individually and as Executive Secretary of the Utah State Board of Education, Defendants and Appellees.

No. 920204.

Supreme Court of Utah.

Aug. 24, 1993.

Stephen W. Cook, Salt Lake City, for plaintiff.

R. Paul Van Dam, Atty. Gen., Brent A. Burnett, Asst. Atty. Gen., Salt Lake City, for defendants.

STEWART, Justice:

Gregory T. Ambus appeals from a summary judgment dismissing his civil rights claims against the Utah State Board of Education, the State Superintendent of Schools, the Professional Practices Advisory Commission, and the Executive Director of the Utah State Board of Education. We affirm.

Ambus was arrested for distributing marijuana in 1986. The charges against him were subsequently dismissed, the record of arrest expunged, and the file sealed.[1] Because of the arrest, Granite School District terminated his employment on February 19, 1987. Ambus filed suit against Granite School District in the federal district court of Utah, challenging the propriety of his dismissal. While that litigation was pending, Ambus moved to Phoenix, where he taught until June 1988.

In 1988, the arrest became the subject of a complaint against Ambus filed with the Utah Professional Practice Advisory Commission (Commission), the disciplinary arm of the State School Board (Board).[2] The Commission mailed a copy of the complaint to 831 Stratford Avenue, Salt Lake City, on March 18, 1988, but it was returned unclaimed. On April 11, the Commission mailed a notice to the same address, informing Ambus of a hearing scheduled for

---

1. The charges were dropped in exchange for Ambus' cooperation with the police.

2. The Board is the state agency responsible for supervising and controlling the public school system. Utah Const. art. X, § 3; Utah Code Ann. § 53A-1-401 (1992). The Board may revoke or suspend a teaching certificate for "immoral, unprofessional, or incompetent conduct or evident unfitness for services authorized by the certificates." § 53A-6-104.

A disciplinary action is initiated against a teacher by filing a complaint with the Commission. Utah Admin.R. 277-514-4 (1992). Utah Code Ann. § 53A-7-111 requires that a copy of the complaint and a notice of hearing be sent to the teacher. If the teacher does not respond to the complaint within thirty days, the Commission may conduct a disciplinary proceeding in the teacher's absence. § 53A-7-111.

May 20. That notice was also returned unclaimed.[3]

On May 20, 1988, the Commission conducted a disciplinary hearing without Ambus in attendance. Jean Thomas, Executive Secretary of the Commission, presented the facts of the case, and the Commission recommended that Ambus' teaching certificate be suspended "until such time as he requests a hearing before the commission." On August 19, the Board decided to revoke, rather than suspend, the teaching certificate. At that time, Dr. Mouritsen, Coordinator of Certification and Personnel, informed the Board that "no one knows where [Ambus] has gone." The Board noted that Ambus could still request a hearing should he wish to reinstate his teaching certificate. After the hearing Ambus returned to Utah and began teaching in the Salt Lake City School District.

Soon after the Board's decision, Ambus was informed that he was no longer eligible to teach in Utah. Ambus challenged the revocation of his certificate on the ground that he had not been given proper notice. He also requested a new hearing and the return of his teaching certificate. The Board refused to return the certificate, but offered Ambus a reinstatement hearing without specifying how that hearing would differ from a new hearing.

A reinstatement hearing was held before a panel of the Commission on October 20, 1988. The evidence against Ambus came from an informant who testified that he had bought marijuana from Ambus and a police officer who testified that he had monitored drug transactions between Ambus and the informant. Ambus, who was represented by counsel, tried unsuccessfully to exclude this evidence on the basis that it had been derived from his expunged record. The panel recommended that the Board uphold its decision to revoke the teaching certificate. The Board agreed

with the recommendation, and the State Superintendent informed Ambus of that decision on March 16, 1989.

On March 20, Ambus filed a verified petition for judicial review. The petition challenged the revocation of his teaching certificate on four grounds: (1) His alleged conduct was not immoral, unprofessional, or incompetent and did not make him unfit for the services authorized by his certificate under Utah Code Ann. § 53A-6-104; (2) the statutory standard for teacher discipline is unconstitutionally vague and/or was unconstitutionally applied to him; (3) the Board impermissibly relied on evidence derived from his expunged record; and (4) the Board failed to give proper notice of the hearing in violation of his due process rights. Ambus also sought a preliminary and permanent injunction to restore his teaching certificate, damages and compensation for the loss of his certificate, punitive damages, damages for mental distress, and reasonable attorney fees for the successful prosecution of his case.

The trial court granted the Board's motion to dismiss the claim of damages for constitutional violations, but declined to dismiss the petition for judicial review. Ambus moved for partial summary judgment on his assertion that the Board erred in considering evidence derived from the expunged record. The trial court denied that motion, reasoning that "the State Board of Education has the right to consider the original conduct of the plaintiff even though the records of criminal conduct and criminal proceedings are not available."

Ambus challenged the trial court's denial of his motion for partial summary judgment in an interlocutory appeal to this Court. We reversed and remanded, holding that Utah Code Ann. § 77-18-2(5)(a) prohibits a government employee from divulging information contained within an ex-

---

3. After the notice was returned, the Granite District Personnel Office told the Commission that Ambus' "last place of residence was in Texas." The Board asked for further information, but the personnel office stated that the Ambus file was sealed and that no specific facts could be given.

punged and sealed record. *Ambus v. Utah State Bd. of Educ.*, 800 P.2d 811 (Utah 1990).

On remand, the Board presented no evidence to support its decision to revoke the teaching certificate. As a result, the trial court entered partial summary judgment for Ambus, ordered the reinstatement of his teaching certificate, and allowed Ambus thirty days to file an amended complaint.

Ambus filed a second amended verified petition for judicial review and complaint, which for the first time named as defendants the State Superintendent and the members of the Board and Commission in their individual and official capacities. In addition to adding new defendants, Ambus resurrected his damages claim for constitutional violations, this time in the form of a 42 U.S.C. § 1983 federal civil rights action. He also sought attorney fees under 42 U.S.C. § 1988 on the ground that he had successfully obtained the reinstatement of his teaching certificate.

The trial court granted the Board's motion for summary judgment. The court ruled that (1) Ambus did not have a § 1983 cause of action against the Board, the Commission, or their members in their official capacities because they are not persons under § 1983; (2) Ambus did not have standing to sue for injunctive or declaratory relief at that time because no current case or controversy existed between the parties that would entitle Ambus to that relief; (3) Ambus failed to state a cause of action pursuant to 42 U.S.C. § 1985(3); (4) the § 1983 claim was barred by the statute of limitations; (5) Ambus' claim for damages under state law was barred by the law of the case and the Utah Governmental Immunity Act; and (6) the individual defendants were entitled to qualified immunity under § 1983. Ambus appeals these rulings, with the exception of the ruling on § 1985(3).

## I.

 Ambus first challenges the trial court's ruling that the Board, the Commis-

sion, and their members sued in their official capacity are not persons under § 1983. To be sued under § 1983, an entity must be a person, as that term has been judicially defined. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Government officials sued in their official capacity are not persons for purposes of an action for damages under § 1983, but they are for purposes of injunctive relief because "official actions for prospective relief are not treated as actions against the State." *Id.* at 71, 109 S.Ct. at 2312 (citing *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985)). Ambus asserts that his action against the Board and Commission members in their official capacity is for injunctive relief. That, however, is not dispositive of the issue here.

The purpose for which Ambus sought injunctive relief was fulfilled when the trial court ordered the reinstatement of his teaching certificate, thus making the issue of injunctive relief moot. Ambus argues that the issue of injunctive relief is not moot because the issue of attorney fees and costs under 42 U.S.C. § 1988 (1988) remains. That argument is without merit.

 To qualify for attorney fees under § 1988, a plaintiff must successfully prosecute a federal civil rights action. 42 U.S.C. § 1988. That has not been done in this case. Ambus initially sought both judicial review of the Board's decision to revoke his teaching certificate and damages for violations of his constitutional rights. His claim for damages did not refer to § 1983 or any other civil rights statute. The trial court dismissed the damages claim for constitutional violations, but refused to dismiss the petition for judicial review. In his first amended petition, Ambus deleted all reference to the damages claim in accordance with the trial court's order. Ambus did not appeal the dismissal of his damages claim for constitutional violations. His interlocutory appeal dealt only with the issue of whether the revocation of

his teaching certificate could be based on information from his expunged criminal record. Nothing in that appeal dealt with a federal civil rights claim. It was not until the trial court on remand ordered the reinstatement of his teaching certificate that Ambus amended his petition a second time and asserted that the Board, the Commission, and their members had violated his federal civil rights. Ambus is therefore not entitled to attorney fees under § 1988 because the reinstatement of his teaching certificate was not the result of a successfully prosecuted federal civil rights action.

## II.

Ambus next contends that the trial court erred in dismissing his § 1983 civil rights action for damages. We affirm the dismissal of this claim on the ground that the Board, the Commission, and their members are protected by quasi-judicial immunity.

■ As stated, a § 1983 civil rights action for damages cannot be brought against the Board, the Commission, or their members in their official capacity because they are not persons under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Ambus' § 1983 claim for damages is therefore necessarily limited to the Board and Commission members in their individual capacity.

■ The law provides special protection for officials sued in their individual capacity for damages under § 1983 for acts committed within the scope of their office. This protection is designed to shield public officials from "undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). Depending on its nature, an official's actions may be protected by either absolute or qualified immunity. The issue of immunity in a federal civil rights case is a matter of federal law. *Martinez v. California*, 444 U.S. 277, 284

n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980) (citing *Hampton v. Chicago*, 484 F.2d 602, 607 (7th Cir.1973)), *cert. denied*, 415 U.S. 917, 94 S.Ct. 1414, 39 L.Ed.2d 471 (1974).

Absolute immunity affords complete protection from liability for damages and defeats a suit at the outset. *Horwitz v. Board of Medical Examiners*, 822 F.2d 1508, 1512 (10th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987). Although the United States Supreme Court has been "quite sparing" in granting absolute immunity, *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 543, 98 L.Ed.2d 555 (1988), it has recognized that "there are some officials whose special functions require a full exemption from liability." *Butz v. Economu*, 438 U.S. 478, 508, 98 S.Ct. 2894, 2912, 57 L.Ed.2d 895 (1978). Absolute immunity has been extended to judges performing judicial acts within their jurisdiction, *Pierson v. Ray*, 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967), prosecutors performing acts "intimately associated with the judicial phase of the criminal process," *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), and certain administrative officials who perform functions analogous to those of judges and prosecutors. *Butz*, 438 U.S. at 511–17, 98 S.Ct. at 2913–16. This last form of absolute immunity is known as quasi-judicial immunity.

■ The grant of absolute immunity to judges, prosecutors, and certain administrative officials insures that the judicial process is not impeded by concerns of personal liability for damages. Absolute immunity, therefore, "precludes an action for damages, as long as the challenged conduct falls within the scope of the immunity." *Austin v. Borel*, 830 F.2d 1356, 1358 (5th Cir.1987).

■ Qualified immunity, on the other hand, shields government officials "from civil damages liability as long as their actions could reasonably have been thought

consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *see also Austin*, 830 F.2d at 1358–59; *Segarra v. McDade*, 706 F.2d 1301, 1306 (4th Cir.1983). While once customary, consideration is no longer given to the subjective intent of the government official; rather, the issue of personal liability "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038. Qualified immunity provides " 'ample protection to all but the plainly incompetent or those who knowingly violate the law.' " *Millspaugh v. County Dep't of Pub. Welfare*, 937 F.2d 1172, 1176 (7th Cir.) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)), *cert. denied,* ── U.S. ──, 112 S.Ct. 638, 116 L.Ed.2d 656 (1991).

■■■■ When challenging an official's actions, a plaintiff may not overcome qualified immunity merely by alleging an abstract violation of an established constitutional right. The right allegedly violated must be " 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. Because it is an affirmative defense, the issue of qualified immunity arises after the plaintiff establishes a prima facie case under § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982).[4] Although absolute immunity and qualified

immunity offer protection to officials from civil damages, they provide no protection from prospective injunctive relief and related attorney fees for a successful plaintiff. *Pulliam v. Allen*, 466 U.S. 522, 542–44, 104 S.Ct. 1970, 1981–82, 80 L.Ed.2d 565 (1984).

Ambus contends that the defendants violated his procedural due process rights in three respects: (1) His right to notice was violated when the Commission failed to send the complaint and notice to 3316 El Serrito Drive; (2) his due process rights were violated when the Board refused to reinstate his teaching certificate and afford him a new hearing after he told the Board of the inadequacy of the Commission's notice; and (3) his right to a fair hearing was violated when the Commission admitted evidence derived from his expunged record. For the purpose of this review, we assume, without deciding, that these assertions amount to constitutional violations. We feel constrained to make this assumption because defendants have not challenged the sufficiency of these claims, but have elected to rely solely on the protection of immunity. We first consider Ambus' second and third assertions.

■■■■ Ambus claims that the Board violated his due process rights by not returning his teaching certificate and providing him with a new hearing. The United States Supreme Court has established a three-part test for determining whether an administrative official's actions fall within the protection of quasi-judicial immunity. Quasi-judicial immunity protects the defendants here if (1) the Board and Commission members performed a traditional adjudicatory function when they held the reinstate-

---

**4.** To establish a prima facie case under 42 U.S.C. § 1983, the plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). A negligent act by a state official, however, does not give rise to § 1983 liability. *Zinermon v. Burch*, 494 U.S. 113, 128 n. 14, 110 S.Ct. 975, 985 n. 14, 108 L.Ed.2d 100 (1990); *see also Daniels v. Williams*, 474 U.S. 327, 336, 106 S.Ct. 662, 667, 88 L.Ed.2d

662 (1986). A plaintiff cannot recover more than nominal damages for procedural due process violations unless it is shown that there would have been no deprivation had the proper procedure been followed or that if the deprivation would have occurred under the procedure, the lack of procedure caused actual harm. *Zinermon*, 494 U.S. at 134 n. 19, 110 S.Ct. at 988; *see also Carey v. Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978).

ment hearing and refused to reinstate the teaching certificate, (2) the Board and Commission members decide cases of sufficient controversy that, in the absence of quasi-judicial immunity, would subject them to numerous actions for damages by disappointed parties, and (3) sufficient safeguards exist within the regulatory framework to protect constitutional rights. *Butz v. Economu,* 438 U.S. 478, 510–13, 98 S.Ct. 2894, 2912–14, 57 L.Ed.2d 895 (1978); *Bettencourt v. Board of Regents in Medicine,* 904 F.2d 772, 783 (1st Cir.1990); *Horwitz v. Board of Medical Examiners,* 822 F.2d 1508 (10th Cir.), *cert. denied,* 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987).

■ As a general proposition, the actions taken by the Board and Commission members in resolving matters involving teacher misconduct are adjudicatory in nature. *See generally Bettencourt,* 904 F.2d at 783; *Horwitz,* 822 F.2d at 1515; *Segarra v. McDade,* 706 F.2d 1301, 1306 (4th Cir.1983); *Kwoun v. Southeast Missouri Prof. Standards Review Org.,* 811 F.2d 401 (8th Cir.1987). The resolution of disciplinary matters involves weighing evidence, considering legal arguments, making factual and legal determinations, and imposing sanctions. The Board's decision to give only a reinstatement hearing and to not return the teaching certificate was made pursuant to its adjudicatory responsibilities. As is customary in an adjudication, Ambus submitted legal arguments in support of his position to the Board, the governmental body charged with resolving legal issues at that stage of the proceedings. The Board took the arguments under advisement and resolved the issues based on its understanding of how the law should apply to the facts. The Board may not have adequately clarified its position, but lack of clarity does not change the adjudicatory nature of the Board's actions. Thus, the first prong of *Butz* is met here.

Without question, the act of revoking a teaching certificate is likely to generate numerous lawsuits against Board and Commission members from disappointed teachers. Board and Commission members perform a critical function in ensuring that only qualified and morally fit teachers are entrusted with the duty of educating our children. To be sure, the Board and Commission make controversial decisions in the course of fulfilling their duties, many of which leave teachers without work and feeling resentful. In making these decisions, it is essential that members of the Board and the Commission work for the advancement of the public good. Board and Commission members may hesitate to advance what they believe to be in the public good if they know that such a course may subject them to personal liability. Thus, the threat of personal liability may, in a very real sense, color a Board or Commission member's judgment and weaken his or her ability to make difficult or unpopular decisions. Thus, the second prong of Butz is also met.

■ There are sufficient safeguards within the complex set of statutes and rules governing teacher disciplinary actions that "enhance the reliability of information and the impartiality of the decisionmaking process." *Butz,* 438 U.S. at 512, 98 S.Ct. at 2913–14. *See generally* Utah Code Ann. §§ 53A–1–101 to –407; §§ 53A–7–101 to –204; Utah Admin.R. 277–514–1 to –5; *Utah Professional Practice Advisory Commission Rules of Procedure: Original Hearing on Complaints* (1988). For a disciplinary action to be brought against a teacher, a complaint must be filed with the Commission. Utah Admin.R. 277–514–4. The complaint and a notice of hearing must then be sent to the teacher. § 53A–7–111. Actions taken upon a complaint must be in accordance with procedures adopted by the Commission in its *Rules of Procedure: Original Hearing on Complaints.* These rules establish a process whereby a teacher may fully develop his or her defense. Among other things, a teacher may be represented by counsel, present evidence, and cross-examine witnesses. Based on evidence presented at the hearing, the Com-

mission recommends what sanction, if any, should be imposed. R. 277–514–4. The Board then reviews the proceeding and makes its decision. *Id.* The teacher may seek judicial review of the Board's decision, including ultimate review by this Court.

It is highly unlikely that an unsubstantiated charge or personal vendetta against a teacher could withstand the scrutiny and safeguards under which disciplinary decisions must pass. Rigorous review should uncover substantive and procedural mistakes and serve as a powerful deterrent to those who might otherwise abuse their authority. This case demonstrates the sufficiency of the procedural safeguards in teacher disciplinary proceedings. Despite his absence at the first hearing, Ambus was given the opportunity to fully develop his defense at a second hearing. Ambus appealed the Board's adverse ruling to the district court and eventually obtained an order reinstating his teaching certificate. The third prong of *Butz*, therefore, is also met.

Because the three-part test of *Butz* is met, we hold that the Board's decision not to return the teaching certificate and to grant only a reinstatement hearing is fully protected by quasi-judicial immunity.

 Ambus next contends that the Commission's admission of evidence derived from his expunged record deprived him of a fair hearing. A decision made at an adjudicatory proceeding to either admit or exclude evidence is clearly a judicial function. *See Segarra v. McDade*, 706 F.2d 1301, 1307 (4th Cir.1983). That a decision to admit evidence is subsequently held to be erroneous does not alter the adjudicatory nature of that decision. Thus, for the reasons stated above with respect to the controversial nature of disciplinary proceedings and the existence of adequate safeguards, we hold that the Commission's decision to admit evidence derived from the expunged record is also protected by quasi-judicial immunity.

Finally, Ambus claims that his right to notice was violated when the Commission failed to send the complaint and notice to the 3316 El Serrito address. Utah Code Ann. § 53A–7–111 (Supp.1988) requires the Commission to send notice of disciplinary proceedings initiated against a teacher to his or her last known address and to the address listed on the Commission's records.[5] The Commission mailed a complaint and notice to 831 Stratford Avenue, both of which were returned unclaimed. It is undisputed that 831 Stratford Avenue was Ambus' last known address. There is some dispute, however, as to whether 831 Stratford was the address of record on file with the Commission. The El Serrito address, which appears to be the original address listed on the Commission's record, is crossed out. Handwritten next to the crossed-out address is 831 Stratford Avenue. Although it is unclear who did that and when or why it was done, these issues need not be resolved because the actions of the Executive Secretary of the Commission, the office responsible for sending notices, are protected by quasi-judicial immunity.

 Court clerks, like judges, are entitled to absolute immunity from civil rights actions for damages when performing tasks that are an integral part of the judicial process. *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir.), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972); *Denham v. Leedy*, 479 F.2d 1097, 1098 (6th Cir.1973); *Mullis v. United States Bankruptcy Court Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir.1987), *cert. denied*, 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988); *Morrison v. Jones*, 607 F.2d 1269, 1273 (9th Cir.1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980). This protection from suit has also been extended to administrative officials who perform duties that are functionally equivalent to those of a court clerk. *Akins v. Deptford Township*, 813 F.Supp. 1098, 1103 (D.N.J.1993).

---

**5.** This section was amended in 1991. Currently, the section requires only that notice be sent to the educator's address listed on the Commission's records.

Giving notice to a teacher of allegations that call into question that teacher's professional status is an integral part of teacher disciplinary proceedings. The responsibility for sending complaints and notices rests with the Executive Secretary of the Commission. *Utah Professional Practice Advisory Commission Rules of Procedure: Original Hearing on Complaints,* I(C)(3) (1988). The Executive Secretary exercises no discretion in determining whether a complaint and notice should be sent, but acts under the direction of the Executive Committee of the Commission. *Id.* The Executive Committee directs the Executive Secretary to send a teacher a complaint and notice when the Committee has made an initial determination that a complaint is within the Commission's jurisdiction and "states a cause of action which the Commission will address." *Id.* at I(C)(2).

Under this system, when the Executive Committee determines the sufficiency of a complaint, it is an administrative body performing an adjudicatory function. Similarly, when sending notice of an adjudicatory determination, the Executive Secretary is an administrative official performing a task functionally equivalent to that of a court clerk. As such, the Executive Secretary's actions in sending the complaint and notice to Ambus are entitled to quasi-judicial immunity.

The ruling of the trial court granting summary judgment to defendants is affirmed.[6]

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

ZIMMERMAN, J., concurs in the result.

---

[6.] We decline to address Ambus' argument that a plaintiff should be allowed to sue a governmental official for damages for violations of the Utah Constitution. Ambus refers only nominally to state constitutional provisions without developing an independent analysis of those provisions. *See State v. Lafferty,* 749 P.2d 1239, 1247 n. 5 (Utah 1988).