**Charles B. TAYLOR, Plaintiff,**

v.

**BRENTWOOD UNION FREE SCHOOL DISTRICT; Board of Education, Brentwood Union Free School District; Anthony Felico, Ruth Rosenthal, Steven Coleman, Frank Cannon, Mary Reid, Owen McCaffrey, Jaime Suarez, in their capacities as Members of the Board of Education, Brentwood UFSD; Anne Rooney, In her Capacity as Acting Principal South Middle School; Frank Mauro, In his Capacity as Superintendent of School Brentwood UFSD; Dr. Rosemary Townley and Dr. Thomas Caramore, In their Capacities as Members of the Disciplinary Hearing Panel, Defendants.**

**No. 95 CV 0178.**

United States District Court,
E.D. New York.

Dec. 2, 1995.

Harriet A. Gilliam, Riverhead, New York, for Plaintiff.

Thomas Caramore, Massapequa, New York, pro se.

Bartlett, Bartlett & Ziegler, P.C. New York City, by Randall Bartlett, for Defendant Dr. Rosemary Townley.

Ciovacco and Campanella, East Meadow, New York by Jeannine A. Broomhall, for School District Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This case arises out of the one year suspension of the plaintiff, Charles B. Taylor ("Taylor"), from his position as a tenured school teacher in the Brentwood Union Free School District (the "School District"). Taylor claims that he was singled out for disciplinary action by the School District and the members of its Board of Education because of his race and his open criticism of their treatment of minority teachers. The plaintiff argues that his suspension violates both his equal protection and free speech rights, as well as New York State anti-discrimination law.

*Background*

The plaintiff is a black male residing in Suffolk County, New York. The defendant

Brentwood School District is a public corporation established pursuant to New York law for the purpose of administering primary and secondary education. The defendant, Board of Education of the Brentwood School District, comprised of the individual defendants, Anthony Felico, Ruth Rosenthal, Steven Coleman, Frank Cannon, Mary Reid, Owen McCaffrey and Jaime Suarez, (collectively the "School Board") is a governmental body responsible for the operation of the School District. The defendant Anne Rooney was the acting principal in the Brentwood School District where the plaintiff worked at all times relevant to this litigation. The defendant, Frank Mauro, is the School District's Superintendent (the School Board, School District and defendants Rooney and Mauro will be collectively referred to as the "School System"). The defendants, Drs. Rosemary Townley ("Townley") and Thomas Caramore ("Caramore"), were two of three disciplinary hearing panel members responsible for suspending the plaintiff.

On January 16, 1992, the Board of Education found that there was probable cause to charge the plaintiff with misconduct, conduct unbecoming a teacher and insubordination. The misconduct and conduct unbecoming a teacher charges were based on events which occurred on May 8, 1989 and December 5, 1991 during which Taylor allegedly used excessive force while disciplining two of his students. The remaining charge alleged that Taylor was insubordinate for ignoring multiple prior warnings regarding the misuse of force. The charges were based on the Board of Education's Policy 5131, which provides:

*Staff Responsibilities In Maintaining Discipline*

Staff will serve as the primary means of enforcing school regulations.... They will supervise the physical movement of students in the class and from one room to another....

Reasonable physical force used for the following purpose is not to be misconstrued as corporal punishment.

(1) to protect oneself from physical injury;

(2) to protect another pupil or teacher or any other person from physical injury;

(3) to protect the property of the school or of others; or

(4) to restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district functions, powers or duties, if that pupil has refused to comply with a request to refrain from further disruptive acts.

Pursuant to these charges, the School Board sought to have the plaintiff dismissed as a tenured school teacher.

Taylor denied the charges, responding in his defense that on December 5, 1991, he was compelled to use force on one of his students, Alex A., in self defense, after being attacked. Similarly, on May 8, 1989, the plaintiff was involved in an incident in which a disruptive student, Rudy P., had to be physically escorted out of classroom in an effort to maintain order.

Taylor requested a hearing on the matter pursuant to New York Education Law § 3020–a before a three member panel (the "Panel"). The Panel was composed of one member chosen by each party with the third member being a neutral party agreed upon by the other two. The Panel held hearings for eight days: on April 6, 7, and 8, May 2 and 28, July 21 and 22, and October 15, 1992. Pursuant to these hearings, the charge regarding the May 8, 1989 incident was dismissed. However, the plaintiff was found to have used excessive force in the December 5, 1991 incident. As a result, the Panel suspended Taylor for one year without pay, finding the penalty of discharge too severe.

The plaintiff's subsequent appeal to the New York Commissioner of Education was dismissed and this lawsuit was filed in federal district court. Although the separate causes of action contained in the Complaint are difficult to categorize, they appear to break down as follows:

1. That the plaintiff's equal protection rights were violated pursuant to 42 U.S.C. § 1983 because he was singled out for his treatment of Alex A. on December 5, 1991 while white teachers engaging in similar conduct were not;

2. That defendants Mauro and Rooney conspired in violation of 42 U.S.C. § 1985(3) to deny the plaintiff his equal protection rights by enforcing the Board of Education Policy 5131 against him, while not enforcing the policy against his white peers committing similar acts;

3. That by singling the plaintiff out for disciplinary action based on his race, defendants Mauro and Rooney violated New York Executive Law § 296.

4. That by charging him with misconduct as a result of the May 8, 1989 incident, the defendants Mauro and the School Board were harassing him based on his race in violation of the 42 U.S.C. § 1983;

5. That the defendants Mauro and the School Board discriminated against him in violation of New York Executive Law § 296;

6. That the defendants-Panel members Townley and Caramore's decision to suspend the plaintiff was against the weight of all the evidence set forth at the disciplinary hearing, was arbitrary and capricious, and unlawfully based on the plaintiff's race;

7. That the plaintiff was singled out for discipline in violation of the First and Fourteenth Amendments because of his open criticism of the School Board; and

8. That the plaintiff was singled out for discipline because of his age and seniority within the School District in violation of New York Executive Law § 296.

The School System defendants move to dismiss the Complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) on a variety of grounds discussed below. The defendants Dr. Townley and Dr. Caramore move for summary judgment pursuant to Fed.R.Civ.P. 56 or alternatively to dismiss for failure to state a claim pursuant to Rule 12(b)(6). For the sake of clarity, the Court will treat both motions as motions to dismiss. While the Court is mindful of the procedural distinctions between these two motions, the Court finds that these distinctions will not affect the outcome in this case. The plaintiff responds that he has sufficiently stated his claims, and that the defendants' motions should be denied.

*Discussion*

### 1. *The Rule 12(b)(6) Standard*

 A complaint will be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord Gagliardi v. Village of Pawling,* 18 F.3d 188, 191 (2d Cir.1994); *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). In addition, such a motion is addressed solely to the face of the pleading, and "[t]he court's function . . . is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985).

 In assessing the sufficiency of a pleading on a motion to dismiss, "all factual allegations in the complaint must be taken as true," *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991), and all reasonable inferences must be construed in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied sub nom., Soifer v. Bankers Trust Co.,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is also mindful that under the modern rules of pleading, the plaintiff need only aver "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f).

With these principles in mind, the Court turns to the facts as set forth in the Complaint.

## 2. The motions to dismiss

■ Presently before the Court are two motions to dismiss. The first was filed by the defendant Dr. Townley and later adopted by the defendant Dr. Caramore, two of the members of the hearing panel which ultimately suspended the plaintiff. As stated above, Taylor claims that the panel's decision was arbitrary and capricious and against the weight of the evidence. Moreover, the plaintiff contends that the decision was motivated by racial animus. Dr. Townley and Dr. Caramore contend that the claims against them should be dismissed on the basis of absolute immunity, qualified immunity, collateral estoppel and failure to allege facts sufficient to state a claim pursuant to Fed.R.Civ.P. 8. The Court notes that while Dr. Townley and Dr. Caramore's motion is based on affirmative defenses, these defenses are apparent on the face of the Complaint and therefore reviewable on a motion to dismiss. See Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir.1993), citing, 5A Wright & Miller, Federal Practice and Procedure § 1357 at 348–49 (2d Ed.1990).

The School System filed a separate motion to dismiss. In their 12(b)(6) motion, the remaining defendants contend that the plaintiff's state law claims, brought pursuant to the New York Executive Law must be dismissed for failure to serve a timely notice of claim. Furthermore, the equal protection and due process claims should be dismissed because the allegations are insufficient to state a claim, and alternatively because they are barred under the doctrine of collateral estoppel. According to the School System, the section 1983 claims should also be dismissed both because the allegations do not satisfy the requirements of Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and because they are precluded by the existence of related Title VII claims, see 42 U.S.C. § 2000e–2 ("Title VII").

## 3. The hearing panel members motion to dismiss

■ As stated above, Drs. Townley and Caramore move to dismiss the cause of action against them on the basis of absolute immunity, qualified immunity, collateral estoppel and failure allege sufficient facts to state a claim. However, before addressing the substance of this motion, the Court notes, parenthetically that the plaintiff has moved pursuant to Fed.R.Civ.P. 56(f) for continuance of the motions to dismiss until the plaintiff has an opportunity to obtain an affidavit from the third hearing panel member not named in the Complaint. That motion is denied. Both motions to dismiss and the motion for a continuance were originally scheduled to be heard on August 11, 1995. It is now December 1, 1995. Three and one-half months should have been ample time to obtain, or at least attempt to obtain any necessary affidavits. No further extension is warranted.

■ Turning to the substance of the remaining motions, defendants Townley and Caramore first argue that Taylor's claims should be dismissed on the ground of absolute immunity. "Absolute immunity confers complete protection from civil suits." Tulloch v. Coughlin, 50 F.3d 114, 116 (2d Cir. 1995) (distinguishing absolute immunity from qualified immunity which protects government officials from civil suit if the official did not violate a clearly established right that a reasonable person would have been aware of, or it was objectively reasonable for the official to believe that his actions would not violate a clearly protected right). Although 42 U.S.C. § 1983 does not explicitly address immunity, it is well settled by case law that judges are entitled to absolute immunity from civil suits brought pursuant to section 1983. See Butz v. Economou, 438 U.S. 478, 496, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978) (stating that section 1983 was not intended to eliminate state or federal judge immunity existing under common law), citing, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872). The Supreme Court has extended the absolute immunity doctrine to cover federal hearing examiners and administrative law judges in addition to Article III judges. Butz, 438 U.S. at 512–14, 98 S.Ct. at 2913–14. Whether other non judicial officers merit absolute immunity depends upon the "functional com-

parability" of their responsibilities to those of a judge. *Imbler v. Pachtman,* 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 991 n. 20, 47 L.Ed.2d 128 (1976); *Young v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994). The test is based on whether the act at issue is judicial in character. *Forrester v. White,* 484 U.S. 219, 228–29, 108 S.Ct. 538, 544–45, 98 L.Ed.2d 555 (1988). The following factors are to be considered when applying this functional approach:

(a) the need to assure that the individual can perform his functions without harassment or intimidation;

(b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

(c) insulation from political influence;

(d) the importance of precedent;

(e) the adversary nature of the process; and

(f) the correctability of error on appeal.

*Cleavinger v. Saxner,* 474 U.S. 193, 202, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985), *citing, Butz,* 438 U.S. at 512, 98 S.Ct. at 2913; *Young,* 41 F.3d at 51. Most influential is the independence of the hearing officer. *See Young v. Selsky,* 41 F.3d 47, 54 (2d Cir.1994) (recognizing that decision to deny absolute immunity to Director of the Office of special Housing and Inmate Discipline responsible for hearing prisoners' appeals might have been different if the Director could have established his independence from the hearing officers themselves); *Jermosen v. Coughlin,* 878 F.Supp. 444, 447 (N.D.N.Y.1995), *citing, Cleavinger,* 474 U.S. at 194, 106 S.Ct. at 497; *Dejesus v. Selsky,* 1995 WL 16768, *1, 1995 U.S.Dist. LEXIS 295, *2 (N.D.N.Y. 1995) (same).

In justifying the extension of absolute immunity to federal hearing examiners and administrative law judges in *Butz, supra,* the Supreme Court noted that federal administrative law proceedings are adversarial in nature and are conducted by a trier of fact insulated from political influence. Each party is entitled to present his case by oral and documentary evidence, and the transcript of testimony and exhibits. Moreover, the parties are entitled to know all findings present-ed on the record. *Butz,* at 513–14, 98 S.Ct. at 2914–15.

The Court also noted that the position of the federal hearing examiners is structured to be independent from the agency. An examiner is not subject to the supervision of either of the parties involved and the examiner may not consult with other members of the agency regarding any issues in a case. *Butz,* 438 U.S. at 514, 98 S.Ct. at 2915.

Conversely, in denying absolute immunity to prison officials serving on a prison disciplinary committee in *Cleavinger,* the Supreme Court found that the committee members lacked sufficient independence. The committee members were the direct subordinates of the warden who reviewed their decision and they often worked with the employee who filed the charge which they are responsible to adjudicate. *Cleavinger,* 474 U.S. at 203–04, 106 S.Ct. at 501–02. Moreover, the prisoner was not afforded independent representation. There was no right to compel the attendance of witnesses or to cross examination, there was no burden of proof, and self serving hearsay was admissible as evidence. *Id.* at 206, 106 S.Ct. at 503.

Applying these standards, the Second Circuit has found that the doctrine of absolute immunity extends to contractually provided arbitrators. *Austern v. Chicago Board Options Exchange, Inc.,* 898 F.2d 882, 885–86 (2d Cir.), *cert. denied,* 498 U.S. 850, 111 S.Ct. 141, 112 L.Ed.2d 107 (1990); *see also Wasyl, Inc. v. First Boston Corp.,* 813 F.2d 1579 (9th Cir.1987) (reaching the same conclusion). In addition, other courts have found that a state board that hears physician disciplinary proceedings brought pursuant to state law, *see Watts v. Burkhart,* 978 F.2d 269, 278 (6th Cir.1992) (en banc); *Bettencourt v. Board of Registration,* 904 F.2d 772, 784 (1st Cir. 1990); *Kutilek v. Gannon,* 766 F.Supp. 967, 973 (D.Kan.1991), the Texas Civil Service Commissioners, who hear employment termination proceedings, *see Mylett v. Mullican,* 992 F.2d 1347, 1353 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993), a state civil service council which hears public employee grievances, *see Atiya v. Salt Lake County,* 988 F.2d 1013 (10th Cir.1993), and a city's personnel hear-

ing officer and review board, *see Saavedra v. City of Albuquerque*, 859 F.Supp. 526, 533 (D.N.M.1994), were all entitled to absolute immunity. Moreover, in a case similar to the one at bar, the Utah Supreme Court held that members of a board of education holding a teacher reinstatement hearing were protected from civil suit under the doctrine of absolute immunity. *See Ambus v. Board of Education*, 858 P.2d 1372 (Utah 1993). The common thread running through these decisions is that although the members of these administrative bodies may not have all the powers of a judge, they were sufficiently independent of the parties, they presided over hearings with sufficient procedural safeguards, and application of the absolute immunity doctrine would promote their ability to perform their quasi-judicial functions honestly and fairly without fear of subsequent litigation.

In light of this precedent, the Court now holds that under the "functional approach" discussed above, the defendants' Dr. Townley and Dr. Caramore, are protected from civil suit under the doctrine of absolute immunity. Similar to a court, the panel serves an adjudicatory function, resolving disputes between adverse parties with respect to the limited issue of teacher discipline. *Cf. Bettencourt, supra* (reaching the same conclusion with respect to state board adjudicating physician disciplinary proceedings). Pursuant to section 3020–a(3)(c)(i), the hearing was conducted with "full and fair disclosure of the nature of the case and evidence against the [plaintiff]." In addition, Taylor was given "a reasonable opportunity to defend himself" being permitted to "testify in his ... own behalf." *Id.* According to the statute, the hearing officer is authorized to issue subpoenas, decide pre hearing motions, including motions to dismiss the charges, hear applications for bills of particulars or requests for production of materials, including witness statements, investigatory statements, exculpatory evidence or other material relevant to the plaintiff's defense. New York Education Law § 3020–a(3)(c)(iii).

The members of the hearing panel, organized pursuant to the provisions of New York Education Law § 3020–a, are independent of the litigants, and therefore not subject to political influence. The hearing panel consists of a hearing officer and two other panelists. All panel members are paid by the Department of Education. The hearing officer is selected from a list of candidates provided by the American Arbitration Association. The other panel members are chosen from a list consisting of individuals employed in education. New York Education Law § 3020–a(3)(a). Moreover, a potential hearing officer is precluded from service if he or she resides in the school district in which the hearing is taking place. New York Education Law § 3020–a(3)(b).

The plaintiff argues that these provisions of the New York Education Law are insufficient to warrant an extension of the absolute immunity doctrine to the panelists. The Court disagrees. Taylor relies primarily on the fact that his disciplinary proceedings lacked the procedural safeguards such as the ability to compel discovery or the attendance of witnesses, contrary to the statute's provisions, and are not subject to other unspecified restrictions provided under the Administrative Procedure Act ("APA"). The Court finds these distinctions are immaterial.

As discussed above, the Second Circuit has already extended absolute immunity to contractually provided arbitrators in *Austern, supra*. These arbitrations typically lack the procedural safeguards of the APA, and are often subject to very limited judicial review. In reaching its conclusion, the Second Circuit focused on the *function* of an arbitration proceeding as a quasi-judicial matter, similar to the disciplinary proceeding at issue here. Accordingly, this Court finds that to the extent that Taylor has distinguished the hearing panel proceedings from analogous judicial proceedings, the plaintiff is merely elevating form over function, in direct contradiction to the "functional approach" continually endorsed by the Supreme Court, and the avalanche of precedent from the lower federal courts which have repeatedly applied the doctrine to quasi-judicial officers in state administrative proceedings. Moreover, any policy reasons underlying the grant of absolute immunity, such as recognition of panel members' obligations as important to the

community or the need to allow the panel members to be comfortable enough when performing their functions and render honest informed decisions without fear of repercussion, weigh in favor of granting absolute immunity here. *See Ambus,* 858 P.2d at 1379.

In light of all of the safeguards provided to ensure the independence of the hearing panel members, and the quasi-judicial powers afforded to the hearing officer, and the necessity for their protection, the Court concludes that panel members serving pursuant to the New York Education Law are protected from civil suit under the doctrine of absolute immunity. Accordingly, Taylor's claims against Dr. Townley and Dr. Caramore are dismissed.

Because the Court finds that the sixth cause of action, against Dr. Townley and Dr. Caramore is dismissed on absolute immunity grounds, the Court need not review these defendants' alternative arguments based on qualified immunity, collateral estoppel and failure to plead sufficient facts to state a claim.

### 4. *The School System's motion to dismiss*

The School System moves to dismiss the remaining causes of action on a variety of theories. The School System contends that Taylor's discrimination claims based on New York Executive Law § 296 must be dismissed for failure to file a timely notice of claim and that the plaintiff's constitutional claims are insufficient to allege causes of action under 42 U.S.C. §§ 1983 and 1985.

### a. *Timeliness of the New York Executive Law claims*

■ New York Education Law § 3813 provides that in order to maintain a claim against a School Board, a School District or its employees, a plaintiff must first serve a notice of claim on defending parties as required under the New York General Municipal Law §§ 50–e and 50–i. This requirement applies to discrimination claims brought pursuant to New York Executive Law § 296. *Hoger v. Thomann,* 189 A.D.2d 1048, 592 N.Y.S.2d 887, 888 (3d Dept.1993), *citing, Mills v. County of Monroe,* 59 N.Y.2d 307,

464 N.Y.S.2d 709, 451 N.E.2d 456 *cert. denied,* 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983); *Baker v. Board of Education of W. Irondequoit Cent. School Dist.,* 127 A.D.2d 967, 513 N.Y.S.2d 307 (4th Dept. 1987); *see also Pinaud v. County of Suffolk,* 798 F.Supp. 913, 925 (E.D.N.Y.1992) (applying the same rules to state claim brought in federal court pursuant to the court's supplemental jurisdiction); *Piesco v. New York Dept. of Personnel,* 650 F.Supp. 896, 899 (S.D.N.Y.1987) (same).

■ According to New York General Municipal Law § 50–e(1)(a), a notice of claim must be filed "within ninety days after the claim arises." Under New York Education Law § 3813, a claim accrues when the damages are "ascertainable." *In re Board of Education of Enlarged Ogdensburg City School Dist.,* 37 N.Y.2d 283, 290, 372 N.Y.S.2d 45, 50, 333 N.E.2d 353, 357 (1975); *Hoger,* 592 N.Y.S.2d at 888.

■ According to section 50–i(1), the action must be filed "within one year and ninety days after ... the *event* upon which the claim is based." This requirement is independent of when the cause of action actually accrues. *Klein v. City of Yonkers,* 53 N.Y.2d 1011, 1013, 442 N.Y.S.2d 477, 477–78, 425 N.E.2d 865, 866 (1981) (emphasis added); *Kitonyi v. Albany County,* 128 A.D.2d 1018, 513 N.Y.S.2d 555, 557 (3d Dept.1987).

■ Applying sections 50–e and 50–i strictly, the School System argues that Taylor has not pled compliance with the notice of claim requirements under section 50–e, and that he failed to file his cause of action within one year and ninety days from the event upon which the claim is based under section 50–i.

The plaintiff responds that the notice and timeliness requirements have been satisfied by substantial compliance with General Municipal Law. Specifically, Taylor contends that the purpose of sections 50–e and 50–i is to provide all parties with sufficient notice of the litigation, and that the courts have found sufficient notice where a party files a petition with the Commissioner of Education to review the determination of an arbitrator's de-

cision. *See Board of Education of Westbury Union Free School District v. Ambach,* 81 A.D.2d 691, 438 N.Y.S.2d 637, 638 (3d Dept. 1981) (holding that the petition to the Commissioner for review of an advisory arbitration decision satisfied both "the time requirements of section 3813 of the Education Law and qualified as a *notice* of claim for it alerted the [School B]oard [as] to the nature of [the plaintiff's] grievance in ample time to enable it to investigate").

The School System attempts to distinguish *Ambach,* asserting that there, the Court was confronted with a non-binding arbitration whereas here the hearing panel's decision was final, although the School System does not explain how this distinction is significant.

The Court's concern however, arises from the fact that this lawsuit is entirely independent of the hearing panel proceedings and therefore requires separate compliance with the notice and timeliness provisions. As stated above, the parties agree that sections 50–e and 50–i of the Municipal Law control the timeliness of the notice of claim. Section 50–e requires the filing of a notice of claim within ninety days from the day the damages may be ascertained. Section 50–i requires that in addition to filing the notice of claim, the plaintiff must also file his action within one year and ninety days from the event giving rise to the claim.

Applying both of these requirements, the Court now finds that Taylor's state discrimination claims are time barred. Even if the Court assumes, as the plaintiff argues, that *Ambach* is controlling precedent, its value is limited in this case. In *Ambach,* the Appellate Division for the Third Department held that where a party filed a petition for relief with the Commissioner of Education thirty days after a school board's failure to adopt an arbitrator's non binding decision, a cause of action accrued "when the board refused to implement the arbitrator's recommendation." *Ambach,* 438 N.Y.S.2d at 638. Moreover, the court held that the petition will satisfy both the notice and time requirements under New York Education Law § 3813. *Id.*

However, *Ambach* was an appeal from an article 78 proceeding, reviewing the decision of the Commissioner of Education. Notice of that proceeding was therefore originally given with the petition to the Commissioner. By contrast, this case involves an entirely separate and independent lawsuit which was commenced with the Complaint filed in this Court on January 13, 1995. In *Ambach,* it was logical and appropriate for the Appellate Division to hold that the article 78 proceeding satisfied the timeliness requirements of section 3813 as a result of the petition being filed with the Commissioner of Education because the article 78 proceeding is in essence an appeal from the Commissioner's decision. Requiring a plaintiff to satisfy the initial notice of claim requirements once to start his lawsuit and then again on appeal would be illogical. However, this case is not an appeal from the earlier hearing panel decision or the Commissioner of Education's dismissal of the appeal. As stated above, it is an entirely separate and independent lawsuit setting forth new causes of action. Accordingly, the requirements of sections 50–e and 50–i must be satisfied independently of whatever occurred during the Department of Education proceedings. Because Taylor has not satisfied these requirements with respect to this lawsuit, his state law discrimination claims are time barred.

 However, to complete the record, the Court notes that even if Taylor's original petition filed with the Commissioner of Education was sufficient to satisfy the notice of claim requirements under New York General Municipal law §§ 50–e, 50–i and *Ambach,* the plaintiff is still unable to allege that this independent lawsuit was filed within one year and ninety days of the underlying violation of rights as required by General Municipal Law § 50–i(*l*)(c).

As the School System contends, the plaintiff's instant lawsuit is based on the disciplinary charges leveled at him in alleged violation of his equal protection and free speech rights. The charges were brought on January 16, 1992. The Complaint was filed on January 13, 1995, almost three years later. As stated above, section 50–i provides that all claims must be brought within one year and ninety days from the event giving rise to the claim. Accordingly, even if the plaintiff could argue that the General Municipal

Law's notice of claim requirements were satisfied, this lawsuit is untimely and the defendants' motion to dismiss the third, fifth and eighth causes of action is granted.

b. *The constitutional claims*

The School System contends that the remaining constitutional claims brought pursuant to 42 U.S.C. §§ 1983 and 1985(3) should also be dismissed for the following reasons: (1) the School System asserts that the plaintiff is unable to establish a claim for procedural due process; (2) it contends that the plaintiff's first amendment claims are unsubstantiated; (3) Taylor's claims are barred under the doctrine of collateral estoppel; (4) the plaintiff has failed to allege the existence of an "official policy" or "custom" which is required in order to find the School System to be liable under *Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Finally, the School System contends that Taylor's section 1983 and 1985(3) claims should have been brought under Title VII which provides the exclusive remedy in this instance.

■■■ However, before reaching the merits of each of these arguments, the Court notes parenthetically that the time bar applied above to invalidate Taylor's state law discrimination claims does not preclude the plaintiffs section 1983 or section 1985 claims. *See Burnett v. Grattan,* 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984) (holding that state statutes of limitations which provide for abbreviated time periods in which to file discrimination lawsuits with the state administrative agencies are preempted, and therefore will not bar constitutional claims brought pursuant to the federal civil rights acts). Accordingly, the one year and ninety day limitation period will not bar Taylor's constitutional claims.

i. *Procedural Due Process*

■■■ The School System contends that the plaintiff's procedural due process claims cannot be sustained as a matter of law. Specifically, the defendants argue that in light of all the procedural safeguards discussed above, namely the adversary hearing, and

the safeguards to protect the independence of the panel, the Court could not find a due process violation.

The plaintiff responds that the School System has gone to great lengths to mischaracterize Taylor's equal protection claims as a procedural due process argument. The Court agrees. The first, second, and fourth causes of action refer to a denial of "equal protection under the law because of [the plaintiff's] race," *see* Compl. 29, a conspiracy to "deny [the plaintiff] equal protection based on his race, in violation of 42 U.S.C. § 1985(3), Compl. 33, and a violation of the "plaintiff's civil rights through an unequal application of Board Policy ... by treating him differently [than] white teachers." Compl. 40. The seventh cause of action refers to a claim for retaliation against the School System in violation of the plaintiff's free speech rights. Although there is one reference to a lack of due process in the complaint, when read as a whole, the plaintiff's allegations support claims for equal protection and free speech rather than due process violations. Accordingly, the School System's motion to dismiss for failure to adequately allege procedural due process claims is denied.

ii. *The First Amendment claim*

■■■ The School System further contends, in conclusory fashion, that the seventh cause of action for violation of free speech rights should be dismissed because "it is inconceivable that plaintiff can claim ... that his First Amendment rights were violated because he was subjected to disparate treatment in the form of an warranted disciplinary actions." Def.Mem. of Law at 11. However, the School System offers no support for this conclusion.

In support of the First Amendment claims, the Complaint alleges that the plaintiff is member of the National Association for the Advancement of Colored People and an outspoken member of the community who has criticized the School District's policies and conduct. According to Taylor, the School System brought a disciplinary proceeding seeking his termination in retaliation for this

criticism. The Court finds that these allegations are sufficient to state a claim for violation of the plaintiff's First Amendment rights. Accordingly, the School System's motion to dismiss the First Amendment claim is denied.

### iii. *Collateral estoppel*

 The School System further asserts that the plaintiff's claims are barred under the doctrine of collateral estoppel. Pursuant to 28 U.S.C. § 1738, federal courts are obligated to afford state judicial proceedings the same "full faith and credit" that the state court proceedings would be entitled to in their home state. *See Long Island Lighting Co. v. Imo Industries, Inc.,* 6 F.3d 876, 885 (2d Cir.1993) (internal quotation omitted). The provisions of section 1738 extend to state administrative determinations where those proceedings provide the parties with an adequate opportunity to litigate their claims. *University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986); *see also Hall v. Marion School Dist. No. 2,* 31 F.3d 183, 190–92 (4th Cir.1994) (holding that where a plaintiff-teacher challenged a School Board's termination decision after an administrative hearing but without administrative review, the teacher was entitled to maintain a section 1983 action because the plaintiff was not afforded an adequate opportunity to litigate her claims). In applying this doctrine, the federal courts must consider the relevant state law of preclusion. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

 Under New York law, to apply collateral estoppel, the courts require "that the issue be identical and necessarily decided in the prior proceeding, and that the party against whom preclusion is sought was accorded a full and fair opportunity to contest the issue in the prior proceeding." *Long Island Lighting,* 6 F.3d at 885, *citing, Allied Chemical v. Niagara Mohawk Power Corp.,* 72 N.Y.2d 271, 276, 532 N.Y.S.2d 230, 232, 528 N.E.2d 153, 155 (1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989); *see also Town of Deerfield v. FCC,* 992 F.2d 420, 429 (2d Cir.1993); *Cepeda v.*

*Coughlin,* 785 F.Supp. 385, 389 (S.D.N.Y. 1992) (the issue must be actually litigated and resolved in the prior proceeding). If the issues are identical, the New York courts require that the agency's determination be "quasi-judicial" in nature. Satisfaction of this "quasi-judicial" standard requires a showing that the agency was authorized to act in an adjudicatory manner, that the facts asserted at the first proceeding were adequately tested, and that giving a preclusive effect to the administrative proceeding would not be unfair or unexpected. *Long Island Lighting Co.,* 6 F.3d at 885–86, *citing, Allied Chemical* 72 N.Y.2d at 276, 532 N.Y.S.2d at 232, 528 N.E.2d at 155.

However, since the constitutional violations were never raised in the hearing panel proceedings, the Court need not engage in this multifaceted inquiry because collateral estoppel is inapplicable by definition. *See Long Island Lighting Co., supra.* Accordingly, the School System's motion to dismiss on collateral estoppel grounds is denied.

 Moreover, even if the Court assumes that the School System intended that the doctrine of *res judicata* will preclude Taylor's constitutional claims, this contention is also rejected. *Res judicata* precludes parties from relitigating claims both actually litigated or which could have been litigated in a prior proceeding. *See Cepeda,* 785 F.Supp. at 387. However, the Second Circuit has already recognized that in the *res judicata* context, article 78 proceedings, such as those which may be invoked under the New York Education Law to review a teacher's disciplinary hearing, will not preclude a subsequent section 1983 claim. *Davidson v. Capuano,* 792 F.2d 275 (2d Cir.1986). In *Davidson,* the Second Circuit reasoned that article 78 proceedings do not provide for the same damages as section 1983 claims. Accordingly, such proceedings will not preclude subsequent civil rights causes of action. *Id.* Although Taylor did not take his case to the state courts by way of an article 78 proceeding, he clearly had that right. Nevertheless, the Court finds the existence of this statutory right sufficient to invoke the rule in *Davidson.* Accordingly, the doctrine of *res*

*judicata* will not bar the plaintiff's constitutional claims.

### iv. *Failure to plead sufficiently*

 The School System also asserts that the plaintiff has failed to sufficiently plead his claims pursuant to Fed.R.Civ.P. 8. To allege a claim pursuant to section 1983, a plaintiff need only allege " 'a short and plain statement of the claim' showing that the pleader is entitled to relief." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993) (quoting Fed.R.Civ.P. 8). Consistent with the seminal case of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), to hold a municipality liable under section 1983, a plaintiff is required to plead and prove: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983). A complaint alleging section 1983 claims should not be dismissed unless it appears beyond doubt that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991) (internal quotation omitted).

Applying these standards, the Court finds that the plaintiff has sufficiently pled his constitutional claims. The Complaint alleges that the School Board Policy 5131, governing Staff Responsibilities in Maintaining Discipline, fully set forth above and providing for the acceptable amount of force to be used in disciplining students, was applied disparately to black and white teachers. Specifically, Taylor alleges that defendants Rooney and Mauro conspired to have him terminated because of his race and his willingness to speak out against the School System under the pretense of applying Board Policy 5131. Pursuant to this conspiracy, charges were leveled against Taylor for misconduct, conduct unbecoming a teacher and insubordination as the result of altercations with two different students while white teachers engaging in similar conduct were not disciplined at all. These charges ultimately led to the plaintiff's disciplinary hearing and suspension. The Court finds that these allegations are sufficient to support the plaintiff's constitutional claims. Accordingly, the School System's motion to dismiss for failure to sufficiently plead his claims is denied.

### v. *Title VII as an exclusive remedy*

 The School System's final contention is that the plaintiff's section 1983 and section 1985 claims are barred because Taylor failed to pursue a remedy under Title VII. Initially, the School System recognizes that Title VII claims may coexist with section 1983 claims as long as the section 1983 claims are based on "substantive rights distinct from Title VII." *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143 (2d Cir.1993) (internal quotation omitted). Among these distinct substantive rights are free speech and equal protection rights pursuant to the First and Fourteenth Amendments. *Id.* However, the School System contends, *citing, Moche v. City University of New York,* 781 F.Supp. 160 (E.D.N.Y.1992), *aff'd,* 999 F.2d 538 (2d Cir.1993) and *McNeil v. Aguilos,* 831 F.Supp. 1079 (S.D.N.Y.1993), that Taylor's constitutional claims arise out of the same facts that would have supported Title VII claims which the plaintiff failed to pursue, and the plaintiff's constitutional claims should therefore be dismissed. The Court disagrees.

As stated above, the Second Circuit in *Saulpaugh* has recognized that a plaintiff may make multiple claims under both Title VII and section 1983 as long as the claims are based on independent substantive rights. In *Saulpaugh,* the issue of whether the Title VII remedy is exclusive was resolved as the result of a case in which the complaint contained concurrent causes of action under both Title VII *and* section 1983. In that case, the trial court was faced with a complaint from which it could readily discern whether the claims arose from the same facts and pursuant to the same substantive rights.

In this case however, there is no concurrent Title VII claim. Accordingly, granting the School System's motion to dismiss on these grounds would require the Court to analyze the Complaint to determine whether

a hypothetical Title VII cause of action exists, and then determine whether that cause of action is sufficiently similar to the existing section 1983 claims to warrant dismissal. The Court declines to undertake such a speculative endeavor. Accordingly, the School System's motion to dismiss on the Title VII argument is denied.

*Conclusion*

After reviewing the parties' submissions, and oral argument, and for the reasons stated above, it is hereby

ORDERED, the plaintiff's motion for a continuance pursuant to Fed.R.Civ.P. 56(f) is denied; it is further

ORDERED, that the motion of defendants, Dr. Townley and Dr. Caramore, to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is granted; it is further

ORDERED, that the defendant School System's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) is granted with respect to the plaintiff's claims brought pursuant to New York Executive Law § 296 and denied with respect to the plaintiff's remaining causes of action brought pursuant to 42 U.S.C. §§ 1983, 1985(3).

SO ORDERED.