**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 91-6207

CHRISTOPHER JAMES MYLETT,

Plaintiff-Appellant,

versus

DAVID M. MULLICAN, ET AL.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

( May 28, 1993 )

Before POLITZ, Chief Judge, GARWOOD and DAVIS, Circuit Judges.

POLITZ, Chief Judge:

This appeal by Christopher James Mylett poses first amendment free speech and fourteenth amendment due process questions. For the reasons assigned we affirm the judgment of the district court.

Background

Mylett was a police officer for the City of Pasadena, Texas. He was assigned to canine duty and, with permission, frequently moonlighted at school functions with his drug sniffing dog, Duke, to locate and apprehend drug violators. When he arrested a fellow

officer's son and insisted on pursuing criminal distribution charges he claims that forces within the department lined up against him. Tensions escalated when fellow officers made him the subject of what Mylett claims were baseless criminal charges.[1]

Without first pursuing grievance procedures or even informing his superiors, Mylett responded by filing suit against the officers. The police chief, David Mullican, initiated disciplinary action against Mylett for not advising his superiors before filing suit and transferred him to desk duty pending resolution of the disciplinary proceedings. Mylett was instructed that during this pendency he was not to take the matter outside of the department, to either the mayor or the media.

For reasons that remain unclear, one day a local television news crew arrived unannounced at Mylett's home seeking permission to film Duke. Mylett testified that he initially refused the request but eventually acquiesced. Mylett did not speak during the course of the filming and pointedly explained that he did not intend to convey any message by allowing the filming. The news segment ran that evening and dealt exclusively with the police department's suspension of its use of Mylett's dog and the amusing fact that Duke was represented by a lawyer. The story ended with the reporter placing a microphone in front of Duke, posing a question; Duke cooperatively barked a response.

The next day a former city council member intervened on

---

[1] The charges stemmed from Mylett's supposed refusal to pay for belt buckles.

Mylett's behalf during a meeting between the mayor and Mullican. Mylett was indefinitely suspended for disobeying a direct order. That decision was reviewed and upheld by the Civil Service Commission. Mylett unsuccessfully appealed to all three levels of the state courts of Texas.

Mylett then filed the instant action against Mullican, three fellow police officers, the members and director of the Civil Service Commission, and seven members of the city council, invoking 42 U.S.C. §§ 1983 and 1985, alleging conspiracy and violation of his free speech and due process rights.

The claims against the municipality and Mullican were tried to a jury; the other defendants were dismissed before trial. At the close of the evidence the court found Mylett's conduct to be protected only to the extent it dealt with police department policy and left to the jury the decision whether the firing was motivated by this aspect of his appearance. Both sides objected to the form of the jury submission.[2] Although the jury found Mylett was not fired for exercising free speech rights, the court mooted that finding and, consequently, annulled any concerns with respect to its submission, when it later ruled that Mylett's conduct was not

---

[2] Mylett objected to the form of the submission because it required the jury to determine whether some part of his speech was protected before it could answer the question related to causation. See **Wilson v. University of Texas Health Center**, 973 F.2d 1263 (5th Cir. 1992) (holding that question whether employee speech is protected and concomitant determination whether it touches a matter of public concern are for the court and to be answered with reference to the form, context, and content of the claimed speech as revealed by the record as a whole), cert. denied sub nom. **Hurst v. Wilson**, 113 S.Ct. 1644 (1993).

entitled to first amendment protection.

Mylett timely appeals, contending that his speech was protected as a matter of law, and that the court erred in its submissions to the jury, and in dismissing the claims against the officers and Civil Service Commissioners.

## Analysis

A.    "Speech" on a matter of public concern.

In order to prevail on his free speech claims, Mylett initially bore a bifurcated burden.[3]  He had to show that he engaged in speech, or at least expressive activity, and that his "speech" was protected by the first amendment.[4]  He then had to

---

[3]    **Dennison v. County of Frederick, Va.**, 921 F.2d 50 (4th Cir. 1990), cert. denied, 111 S.Ct. 2828 (1991).

[4]    Obviously, not all speech receives such protection, e.g., **Frohwerk v. United States**, 249 U.S. 204 (1919) ("[T]he First Amendment while prohibiting legislation against free speech as such cannot have been, and obviously was not, intended to give immunity for every possible use of language . . . ."), indeed, not all forms of speech receive the full panoply of protections available to others.  E.g., **Capital Broadcasting Co. v. Mitchell**, 333 F.Supp. 582 (D.D.C. 1971), aff'd without op. sub nom. **Capital Broadcasting Co. v. Acting Attorney General**, 405 U.S. 1000 (1972) (commercial speech).

Speech by a public employee, as an employee, on a matter purely of private concern falls outside the protective radius of the first amendment. **Wilson**, supra; **Caine v. Hardy**, 943 F.2d 1406 (1991) (*en banc*), cert. denied, 112 S.Ct. 1474 (1992).  Moreover, in the case of otherwise protected speech by a public employee, an additional question arises:  whether the employer's legitimate interest in promoting efficiency in public services outweighs the individual's interest in free speech. **Connick v. Myers**, 461 U.S. 138, 150 (1983); **Pickering v. Board of Educ.**, 391 U.S. 563, 568 (1968).  The employer bears the burden of production with respect to this last question. **Moore v. City of Kilgore, Tex.**, 877 F.2d 364 (5th Cir.), cert. denied, 493 U.S. 1003 (1989).

4

establish that his exercise of free speech rights was "a substantial factor" in his firing[5] and resulted in damages.[6] The threshold questions are purely legal and unless they are answered in Mylett's favor the jury is not presented the substantial factor and damages questions.[7]

Our review of the record persuades beyond peradventure that Mylett did not engage in speech, much less protected speech. We review that issue *de novo*[8] and need look no further than Mylett's testimony that he had no desire or intent to communicate with anyone and that he came out of his house and allowed the news crew to film his dog only because his wife had become agitated by the presence of the camera crew and curious on-lookers.[9]

---

[5]  **Mt. Healthy City School Dist. Bd. of Educ. v. Doyle**, 429 U.S. 274 (1977); **Coughlin v. Lee**, 946 F.2d 1152, 1157 (5th Cir. 1991).

[6]  **Carey v. Piphus**, 435 U.S. 247 (1978).

[7]  **Coughlin**.

[8]  **Fyfe v. Curlee**, 902 F.2d 401 (5th Cir.), cert. denied, 498 U.S. 940 (1990).

[9]  On cross-examination he testified as follows:

Q:  Mr. Mylett you were intending to speak out that day about the situation regarding you and your dog?  You participated with the TV station for the purpose of doing that didn't you?

A:  I appeared on TV to get the TV people off my property and allow them to get what they wanted.

5

It is obvious that Chief Mullican opted to keep Mylett on a very short leash while the disciplinary proceedings were pending. Reasonable minds could easily find that his firing was inappropriate to the point of being draconian. Having concluded, however, that no protected speech was implicated, our inquiry on this point must end.[10]

B. Claims against members and employees of the Civil Service Commission.

Mylett sued Charles Beckman, Leon Phillips, and Wayne Taylor, all members of the Pasadena Civil Service Commission, in their individual and official capacities. He asserts that Mullican met with each member before the hearing to persuade them to uphold the termination decision. He also asserts that Bill Storey, Director of the Civil Service Commission, intentionally deprived him of the testimony of a witness by causing a subpoena to issue with an incorrect date. Mylett sought compensatory and punitive damages from the three Commissioners and Storey. The district court, as noted, dismissed those claims before trial. We review that

---

Q: Is that really the only reason why you did it, Mr. Mylett?
A: To get rid of them?
Q: Yes, sir.
A: Yeah. It was pretty much creating a crowd in front of my home and making my wife upset.

[10] **Connick**, 461 U.S. at 146 ("Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service" are not properly the subject of federal judicial review.); **Coughlin**, supra. We stress that our review is limited to those questions raised below and asserted as error in this court, in this instance, the impairment of free speech rights.

decision *de novo*. We must first examine the Commission's structure.

### 1. The statutory framework

Chapter 143 of the Texas Local Government Code authorizes municipalities with populations of 10,000 or more to establish a Civil Service Commission to supervise police and fire fighter hiring, promotion, and retention.[11] The City of Pasadena adopted Chapter 143 by general election. The Commission is composed of three persons, appointed by the chief executive of the municipality and confirmed by the governing body.[12] The members serve staggered terms and can be removed only for misconduct. They may be suspended only if charged with a crime of moral turpitude and no one may be appointed who has held public office within the preceding three years.

The Commission has the authority to adopt its own rules of procedure and rules governing the hiring of police officers.[13] It must adopt rules that prescribe removal for cause which comply with the grounds for removal listed in Chapter 143, including "violation of an applicable . . . police department rule or special order."[14] The Commission must publish its rules and make them available on

---

[11]     Tex. Loc. Gov't Code Ann. § 143.002 (Vernon 1988).

[12]     **Id.** at § 143.006.

[13]     **Id.** at § 143.008.

[14]     **Id.** at § 143.051(12).

demand.

Of particular present relevance, the Commission is vested with adjudicative powers being, *inter alia*, solely responsible for determining fact questions pertaining to claims of misconduct. In so doing, the Commission is clothed with all of the procedural trappings typically associated with a common-law finder of fact. It may compel and hear relevant testimony,[15] administer oaths with the same force as a magistrate judge,[16] cause the deposition of witnesses in accordance with procedures applicable in federal district court,[17] make findings of fact,[18] and conclude whether, in a given case, discipline, including termination, is in order.[19] Any judgment rendered by the Commission is subject to *de novo* appellate review in the state district court.[20] In essence, its composition and functions are very similar to those of a federal agency

---

[15] **Id.** at § 143.009(b).

[16] **Id.**

[17] **Id.**

[18] **Id.** at § 143.053.

[19] **Id.** at § 143.010(g); **Connor v. Klevenhagen**, 726 S.W.2d 205 (Tex.App. -- Houston [14th Dist.] 1987, writ ref'd n.r.e.) (finding the Civil Service Commission a quasi-judicial body and also finding no need to join it as a party to an appeal).

[20] Tex. Loc. Gov't Code Ann. § 143.015 (Vernon 1988).

8

delegated both rulemaking and adjudicative powers.[21]

Chapter 143 directs the Commission's fact-finding process. For instance, the chief of police must inform the officer in writing of the factual basis for any disciplinary action and must inform the Commission within 120 hours of the disciplining of any officer.[22] The Commission must thereafter hold a hearing.[23] During this hearing the Commission may not answer pure questions of law[24] and may only consider those factual issues detailed in the chief's original letter;[25] no amendments are allowed. The Commission may consider only the evidence presented at the hearing[26] and must render its decision in open session within 30 days of the officer's

---

[21] See James R. Eissinger, Judicial Review of Findings of Fact in Contested Cases Under APTRA, 42 Baylor L.Rev. 1 (1989) (noting Texas courts review judgments of the Commission for substantial evidence despite statutory direction for trial *de novo*); **Firemen's & Policemen's Civ. Serv. Comm'n v. Brinkmeyer**, 662 S.W.2d 953 (Tex. 1984) (discussing limited nature of review of police officer's appeal from adverse Commission ruling and reviewing it under traditional principles of administrative law).

[22] Tex. Loc. Gov't Code Ann. § 143.052 (Vernon 1988).

[23] **Id.** at § 143.053.

[24] **City of Wichita Falls v. Harris**, 532 S.W.2d 653 (Tex.Civ.App. -- Fort Worth 1975, writ ref'd n.r.e.).

[25] Tex. Loc. Gov't Code Ann. § 143.053 (Vernon 1988).

[26] **Id.** at § 143.010.

notice of appeal.[27]  The officer has a right to be represented by counsel at this hearing, to cross-examine witnesses,[28] and to have witnesses placed under "the rule."[29]  Should the officer prevail on appeal attorney's fees may be awarded.[30]

Of particular note, Chapter 143 safeguards against the very abuse alleged here, *ex parte* contact.[31]  Section 143.102 prohibits such contact and provides for automatic judgment in favor of the non-offending party.  Mylett did not secure this relief in his trip through the entire Texas court system.  We must now resolve whether quasi-judicial immunity precludes advancing those same claims under federal law.

2.   Judicial and quasi-judicial immunity

Section 1983 of 42 U.S.C. embraces traditional notions of immunity;[32] so does section 1985.[33]  It is generally understood that

---

[27]   **Id.** at § 143.053.  The Commission must make specific, written findings of fact, signed by each Commissioner and kept on file for public inspection.  **Id.** at § 143.011.

[28]   **Richardson v. City of Pasadena**, 513 S.W.2d 1 (Tex. 1974).

[29]   **Id.** at § 143.010.  See Tex.R.Civ.Evid. 614.

[30]   Tex. Loc. Gov't Code Ann. § 143.015(c) (Vernon 1988).

[31]   See also **Richardson**, supra (applying identical requirement pursuant to due process guarantee).

[32]   **Wyatt v. Cole**, 112 S.Ct. 1827 (1992).

[33]   **Byrne v. Kysar**, 347 F.2d 734 (7th Cir. 1965), cert. denied, 383 U.S. 913 (1966).

10

a judge, and those similarly situated, have absolute immunity for judicial acts.[34] The role and duties of a "judge" cannot always be neatly compartmentalized; not all acts by one bearing that title are judicial,[35] nor are all judicial acts deserving of the immunity granted exclusively to judges.[36]

Advances in dispute resolution have spread adjudicative responsibilities more widely[37] while the judiciary lends itself at the same time to a broader range of responsibilities traditionally considered executive or legislative in nature.[38] Mindful of the priority of substance over form, we must resolve whether Texas Civil Service Commissioners are entitled to absolute immunity against charges of corruption stemming from their decision in a termination proceeding. That question is *res nova* for this court.

---

[34] **Pierson v. Ray**, 386 U.S. 547 (1967).

[35] E.g., **Forrester v. White**, 484 U.S. 219 (1988); **Harper v. Merckle**, 638 F.2d 848 (5th Cir.), cert. denied, 454 U.S. 816 (1981).

[36] E.g., **Mullis v. United States Bankruptcy Court**, 828 F.2d 1385, 1390 (9th Cir. 1987), cert. denied, 486 U.S. 1040 (1988) ("Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process.").

[37] E.g., **Commodity Futures Comm'n v. Schor**, 478 U.S. 833 (1986).

[38] E.g., **Mistretta v. United States**, 488 U.S. 361 (1989). This experience is not limited to the federal system. See **Markham v. Clark**, 978 F.2d 993 (7th Cir. 1992).

11

When determining whether a state governmental officer is entitled to absolute immunity we examine the character of the officer's duties and the relationship to the parties.[39] If the officer's duties are of a judicial nature[40] we must then weigh the costs and benefits of denying or affording absolute immunity. Our analysis is informed by reference to the following factors: (a) the need to assure that the individual defendant can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; (f) the correctability of error on appeal.[41] No one factor is controlling and the list of considerations is not intended to be exclusive.[42] After considering

---

[39] **Stump v. Sparkman**, 435 U.S. 349 (1978).

[40] We think the answer to this question is obvious. Texas courts recognize the judicial nature of the Commission's fact-finding mission. See **Vick v. City of Waco**, 614 S.W.2d 861 (Tex.Civ.App. -- Waco 1981, writ ref'd n.r.e.). Our review above of the makeup of the Commission and of the record in this case confirms that this view is consistent with federal law. The Supreme Court has noted that "[a] judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." **Prentis v. Atlantic Coast Line Co.**, 211 U.S. 210, 226 (1908). The essential question before us is whether, as a matter of sound policy, the Commissioners should be afforded absolute or qualified immunity.

[41] **Cleavinger v. Saxner**, 474 U.S. 193 (1985).

[42] **Id.** at 202.

12

these factors and the Commission's role in this case, we conclude and hold that the individual Commissioners are entitled to absolute immunity for the performance of their official duties.

The Supreme Court's decision in **Butz v. Economou**[43] is instructive. There the Court emphasized that the judicial process, by its nature, inexorably leaves one party willing to "accept anything but the soundness of the decision in explanation of the action of the judge"[44] and applied absolute immunity to federal administrative officers and hearing examiners, likening their responsibilities to those of a judge. The Court noted that, as here, extensive safeguards checked against the likelihood of unconstitutional excesses.

Citing concerns about the lack of independence of prison officials charged with reviewing disciplinary claims in **Cleavinger v. Saxner** and school board members who reviewed student violations of school regulations in **Wood v. Strickland**,[45] the Supreme Court refused to extend absolute immunity. Unlike those officials, the Commissioners herein serve in a politically protected capacity and their actions are constrained in detail by their enabling statute. We hold that, on balance, absolute immunity best serves the efficacy of the Commission's adjudicatory function. Our conclusion

---

[43]    438 U.S. 478 (1978).

[44]    **Id.** at 509 (citing **Bradley v. Fisher**, 13 Wall. 335, 348 (1872)).

[45]    420 U.S. 300 (1975).

13

accords with rationales of decisions by other courts.[46]

The current state of the record does not permit consideration of whether Storey's act of preparing a subpoena is entitled to absolute immunity.[47] As an employee of the Commission that act, however, is entitled at least to qualified immunity.[48] The bare allegation almost five years after filing suit that Storey intentionally misdated a subpoena so as to deny Mylett the benefit of testimony is insufficient to overcome qualified immunity.[49]

C.    Claims against the officers.

Mylett's claims against three police officers under 42 U.S.C. § 1983 for denial of due process and § 1985 for conspiracy need not long detain us. We agree with the district court's conclusion that Mylett failed to assert a cognizable class-based animus to support a claim under section 1985 and failed to establish an enforceable

---

[46]    E.g., **Brown v. Griesenauer**, 970 F.2d 431 (8th Cir. 1992) (finding alderman absolutely immune from civil liability for having impeached a mayor for misconduct); **Lentsch v. Marshall**, 741 F.2d 301 (10th Cir. 1984) (providing absolute immunity to a witness in a hearing before a Civil Service Commission and noting the judicial nature of the proceedings); **Hollowell v. Gravett**, 703 F.Supp. 761 (E.D.Ark. 1988) (attorney practicing before the Civil Service Commission); **Burton v. Peartree**, 326 F.Supp. 755 (E.D.Pa. 1971) (Federal Civil Service Commissioner).

[47]    **Williams v. Wood**, 612 F.2d 982 (5th Cir. 1980) (immunity of court personnel varies depending on whether they are acting pursuant to a court decree or under explicit direction of the judge).

[48]    **Id.**

[49]    **Mitchell v. Forsyth**, 472 U.S. 511, 526-28 (1985).

14

property interest as against these defendants.

The judgment of the district court is, in all respects, AFFIRMED.