**Kary D. DUNCAN, Plaintiff,**

v.

**The MISSISSIPPI BOARD OF NURSING and Marcella L. McKay, R.N., M.S.N., Executive Director; Laura Kelly, R.N., President; Barbara Hayman, R.N., Secretary; Gladys Hughes, LPN, Treasurer; Iva Mae Blackledge, LPN; Peggy Brady, LPN; Dr. Mary Patricia Curtis, R.N., FNP; Cleopatra Hudson, LPN; Thelma Latham, Consumer; Dr. Karen Saucier**

Lundy, R.N.; LaDonna Kat Northington, R.N.; Renee Williams, R.N.; and Dr. Charlotte Wood, R.N.; Individually and in their official capacity as members of the Mississippi Board of Nursing, Defendants.

Civil Action No. 3:96–CV–96WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

Feb. 7, 1997.

John S. Barron, E. Michael Marks, Jackson, MS, for plaintiff.

T. Hunt Cole, Jr., Office of Atty. Gen., Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the motion of the defendant Mississippi State Board of Nursing and all the individually named defendants (hereinafter "defendants") for summary judgment pursuant to Rule 56(b)[1] of the Federal Rules of Civil Procedure. The plaintiff Kary G. Duncan (hereinafter "plaintiff") brings this lawsuit asserting that his professional nursing license was restricted and eventually suspended by the Mississippi Board of Nursing in an arbitrary and capricious manner, without substantial supporting evidence, and in violation of Mississippi law.[2] Plaintiff claims that he has been deprived of his liberty and property by the Mississippi Nursing Board without due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution;[3] and that the actions of the Mississippi Nursing Board and its individual members were taken under color of state law, thereby giving rise to a cause of action pursuant to Title 42 U.S.C. § 1983.[4] Jurisdiction over this matter is predicated upon Title 28 U.S.C. § 1331[5] (federal question); and Title 28 U.S.C. § 1343(a)(3) which provides that, "[t]he district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

The defendants contend that, insofar as the plaintiff's claims are against the State of Mississippi and against the individually named defendants in their official capacities, the defendants are entitled to summary judgment, citing *Will v. Michigan Department of State Police*, 491 U.S. 58, 64–66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). *Will* holds that a State is not a "person" who may be sued for damages under Title 42 U.S.C. § 1983. Relying on *Will*, defendants also argue that the plaintiff's claims against the State of Mississippi and the individually named defendants in their official capacities are barred by the Eleventh Amendment[6] to

---

1. Rule 56(b) of the Federal Rules of Civil Procedure provides that "[a] party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

2. As shall be set forth in greater detail below, the plaintiff's complaint is buttressed by two separate decisions of the Chancery Court of Warren County, Mississippi, which twice reversed the findings of the Mississippi Board of Nursing against the plaintiff. Among the reasons for the two reversals stated by the Chancellor are: failure to follow proper statutory procedure; hiding exculpatory evidence; and improper imposition of disciplinary action in violation of state law and in violation of the plaintiff's constitutional rights.

3. Section 1 of the Fourteenth Amendment of the United States Constitution provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

4. Title 42 U.S.C. § 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

5. Title 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States."

6. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

the United States Constitution. On this point of law, the plaintiff agrees with the defendants that *Will* and the Eleventh Amendment of the United States Constitution bar his constitutional claims against the State of Mississippi and the individually named defendants in their official capacities. Therefore, inasmuch as there is no dispute regarding those claims, they are hereby fully and finally dismissed with prejudice.

There remain the plaintiff's claims against the defendants (other than the State of Mississippi) in their individual capacities. The defendants argue that in their individual capacities they are entitled to absolute quasi-judicial immunity because the adjudicatory role of Mississippi Board of Nursing and its members is comparable to that of judicial officers, citing *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (holding that Department of Agriculture officials who are responsible for deciding whether to initiate or continue agency adjudication of a matter, in order to be free of intimidation and harassment, are entitled to absolute immunity from damages liability under § 1983). *Id.*, 438 U.S. at 516–18, 98 S.Ct. at 2916. Plaintiff responds that the defendants, rather than administrative judges or hearing officers, are situated more similarly to individual members of school boards, citing *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (rejecting a claim of absolute immunity by school board members). Plaintiff also argues that Miss.Code Ann. § 73–15–31(11),[7] the Mississippi statute which provides immunity for the members of the Mississippi Board of Nursing from civil actions based on their official conduct, is more congruent with the qualified immunity standard set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (qualified immunity extends to governmental officials performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known), than with the absolute immunity protection discussed in *Butz*. Therefore, the issue currently before this court is whether the individually named defendants, all members of the Mississippi Board of Nursing, are entitled to claim the defense of absolute quasi-judicial immunity from the plaintiff's § 1983 lawsuit. This court is persuaded that the defendants have the better of this argument.

## BACKGROUND

The plaintiff acknowledges that his Mississippi nursing license was revoked in 1990 due to his drug and alcohol dependency. However, plaintiff says he underwent treatment for his dependency and applied with the Mississippi Board of Nursing (hereinafter the "Board"), an administrative body authorized to regulate the nursing profession in Mississippi, to have his license reinstated. By Order of the Board dated June 10, 1991, license number R–719854 was re-issued to the plaintiff subject to certain stipulations, among them that the issuance of the license was on a probationary basis for a period of twenty-four months; that the plaintiff would be required to remain in a Board-approved aftercare program; that plaintiff's employers would submit monthly reports to the Board regarding plaintiff's work performance; that the plaintiff would provide proof of his attendance at least three AA/NA[8] meetings per week; that the plaintiff voluntarily would submit random urine samples to a Board-approved agency at least once per month; and that the plaintiff would submit to random urine sampling on demand of the Board.

On February 12, 1992, the plaintiff was summoned to appear before the Board for a review of the terms of his probation. According to the summons, the plaintiff was being cited for failure to provide urine samples in the months of November and December of 1991. A hearing was conducted and

---

7. Mississippi Code Annotated § 73–15–31(11) provides that "[a]ny member of the board and any witness appearing before the board shall be immune from suit in any civil action brought by a licensee who is the subject of a review hearing if such member or witness acts in good faith within the scope of the board and has made a

reasonable effort to obtain the facts of the matter as to which the individual acts, and acts in the reasonable belief that the action taken is warranted by the facts."

8. Alcoholics Anonymous/Narcotics Anonymous.

the Board concluded that the plaintiff had not complied with the Board's Order dated June 10, 1991, because the plaintiff failed to provide drug screen urine samples in November and December of 1991. On May 4, 1992, the Board informed the plaintiff by letter of its decision to extend his period of probation and to fine him $300.00. The plaintiff appealed the decision to the Chancery Court of Warren County, Mississippi, the Honorable Gerald E. Braddock (hereinafter the "Chancellor") presiding.

In a Letter/Opinion dated February 25, 1993, the Chancellor reversed both the extension of the plaintiff's period of probation by the Board and the imposition of the $300.00 fine. Firstly, the Chancellor expounded on the poor condition of the record, admonishing the Board to follow the procedures provided by statute and to develop procedures for taking evidence in an orderly fashion, notwithstanding that the Board was only an administrative entity not bound by the rules of evidence. Secondly, the Chancellor found that evidence in the Board's possession at the time of the plaintiff's hearing fully explained the plaintiff's apparent failure to provide urine samples in November and December of 1991. Specifically, the Chancellor found from the record before him that the plaintiff had been a patient at Charter Lakeside Hospital in Memphis, Tennessee, between November 15 and November 22, 1991; that plaintiff had submitted a urine sample for drug screening while hospitalized;[9] that the screen had been negative; that a report of this screen had been submitted to the Board; and that the Board had chosen to ignore this evidence when it imposed disciplinary sanctions on the plaintiff.[10]

Additionally, the Chancellor noted that the plaintiff had changed employers in December of 1991, from Southwest Mississippi Mental Health Complex in Lincoln County, Mississippi, to the Marian Hill facility in Vicksburg,

Mississippi. The Chancellor concluded from the record that the Board had been notified of this change of employer; that both the plaintiff and the Board had been confused about to whom the plaintiff was to report for drug screening after the job change; and that the plaintiff's attempts to arrange for a drug screen at his previous work site had failed because the counsellor, Mr. Bill Musick, had not been available during the entire month of December. Moreover, noted the Chancellor, when the plaintiff had submitted a urine sample at his new place of employment as directed by the Board in January of 1992, the result had been negative.

Finally, the Chancellor noted that all of the plaintiff's drug screens before and after December, 1991, had been negative; that the plaintiff's actions had not been unreasonable; that the record showed monthly progress reports from the plaintiff's employer; that the record showed regular weekly attendance at AA/NA meetings; and that the Board had never demanded a random sample itself, notwithstanding that the Board was aware of the apparent failure of the plaintiff to appear for screening. The Chancellor opined that the Board's failure to find the plaintiff guilty of anything other than the two missing drug screens—for which the plaintiff had given reasonable explanations—did not reach the required standard of proof for the disciplinary action taken. The Chancellor concluded that the plaintiff had fully complied with the Order of the Board dated June 10, 1991; thus, the Board's decision was reversed.

While the foregoing matter was pending before the Warren County Chancery Court, the Board issued to the plaintiff a second summons dated January 22, 1993, to appear for another probation review hearing on February 19, 1993. The charge was failure to submit random urine samples. The Board found that the plaintiff had submitted all urine samples between the twenty-fifth and

---

**9.** The Chancellor noted that the Board never contended that Charter Lakeside Hospital was not approved for conducting drug screens.

**10.** The Chancellor stated that the testimony of the Board's investigating officer revealed an attempt to remain silent with regard to the report from Charter Lakeside Hospital, notwithstanding that this report had been in the Board investiga-

tor's possession for nearly five months prior to the administrative hearing. The Chancellor noted that when the investigator was asked about the report, the reply was, "[m]aybe its here and I just haven't gotten to it." Only then, said the Chancellor, was the report even placed in the record.

thirtieth of each month. The Board also noted that the plaintiff had submitted his urine samples while unobserved by the specimen taker. On March 5, 1993, the Board informed the plaintiff that his license had been revoked. This revocation was appealed to the Chancery Court of Warren County.

The Chancellor found that the revocation of the plaintiff's nursing license was not imposed in accordance with proper statutory procedure as provided at Miss.Code Ann. §§ 73–15–29 [11] and 73–15–31. [12] The disciplinary action, said the Chancellor, went forward despite the lack of a sworn affidavit. Moreover, said the Chancellor, under the guise of a probation review, the Board carried out a more strident disciplinary hearing, leading to the revocation of the plaintiff's license. Requests for a continuance from the February 19, 1993, hearing date by the plaintiff and his attorney had been denied, the Chancellor noted, notwithstanding the provision of Miss. Code Ann. § 73–15–31 that "the board may grant the accused at least one (1) extension of time, upon the request of the accused." There was no evidence presented to the Board, said the Chancellor, showing that the urine samples submitted by the plaintiff were not his own or that they had been tampered with in any way. The Chancellor noted that one of the laboratories where the plaintiff's specimens had been taken had an all–female staff and that observation under those circumstances would have been inappropriate. The sole ground for revocation of the plaintiff's license, said the Chancellor, was the failure to submit urine: samples in a random fashion. However, said the Chancellor, the

Board was aware of the dates the plaintiff's specimens were being submitted; yet, it never at any time made demand upon the plaintiff for an unannounced random urine sample as it was authorized to do in accordance with its own June 10, 1991, Order. In view of these and other findings, [13] the Chancellor concluded that the Board's action in this matter was arbitrary and capricious, in violation of state statutes and in violation of the plaintiff's rights under state law and the Constitution. Revocation of the plaintiff's license was reversed and rendered and plaintiff was immediately reinstated to practice nursing.

On February 9, 1996, the plaintiff filed this lawsuit pursuant to § 1983, seeking $500,-000.00 in actual damages and $500,000.00 in punitive damages for damage to the plaintiff's reputation; for psychologist's fees; for loss of income; for infliction of mental anguish and emotional distress; and for attorney fees. It is against the foregoing backdrop that this court undertakes to determine whether the defendants' claim to absolute immunity from this lawsuit is justified and whether summary judgment on that ground should be granted.

### STATUTORY FOUNDATION OF THE BOARD'S ADJUDICATORY ROLE

Defendants argue that their role in this case, as in all matters involving disciplinary actions against nurses who have violated any of the provisions of Miss.Code Ann. § 73–15–

---

11. Mississippi Code Annotated § 73–15–29 provides in pertinent part that "[t]he board shall have power to revoke, suspend or refuse to renew any license issued by the board, or to deny an application for a license, or to fine, place on probation and/or discipline a licensee, in any manner specified in this chapter, upon proof that such person:

> (h) Is addicted to or dependent on alcohol or other habitforming drugs or is a habitual user of narcotics, barbiturates, amphetamines, hallucinogens, or other drugs having similar effect, or has misappropriated any medication; . . ."

12. Mississippi Code Annotated § 73–15–31 provides in part that "[c]harges may be brought upon sworn affidavit filed by the Board of Nursing against any licensee who has allegedly committed any act in violation of this chapter that is grounds for disciplinary action. Upon receiving the sworn affidavit charging a licensee with an act which is a ground for disciplinary action under this chapter, the executive director or designee of the board shall fix a time and place for a hearing and shall cause a copy of the specific allegations and charges to be sent by certified mail or served by personal service of process together with notice of the time and place fixed for the hearing to be served upon the accused at least fifteen (15) days prior thereto. . . ."

13. The Chancellor referred to the Board as a "predator" waiting to pounce and revisited the previous effort of the Board to "keep secret" the November, 1991, urine sample report from the Charter Lakeside Hospital.

29 or other applicable statutes, is purely adjudicatory. Defendants note that they compose the thirteen members of the Board appointed by the Governor of Mississippi[14] to conduct adjudicatory disciplinary proceedings, issue subpoenas, require attendance of witnesses, administer oaths, and issue rulings based on sufficient legal evidence.[15] Further, defendants note, pursuant to Miss.Code Ann. § 73-15-31(9),[16] their decisions are subject to judicial review by the Chancery Court of the County where the licensee resides and, ultimately, by the Mississippi Supreme Court, just as any other judicial decision. Finally, defendants note that Board members serve defined terms, as members of the board must be appointed in staggered terms for four (4) years and may serve two (2) consecutive terms. See Miss.Code Ann. § 73-15-9(3).[17] Thus, argue defendants, these Board members are not employees subject to supervisory pressure in their decisions, but are independent professionals who are themselves the governing authority of the agency. As such, according to defendants, this Board stands in the same circumstances as parole board members, bar association disciplinary boards, administrative judges and many other officials who have been found entitled to claim absolute immunity from § 1983 lawsuits.

## ANALYSIS OF DEFENDANTS' ABSOLUTE IMMUNITY CLAIM

Title 42 U.S.C. § 1983 is written in broad terms. It purports to subject "[e]very person" acting under color of state law to liability for depriving any other person in the United States of "rights, privileges, or immunities secured by the Constitution and laws." See *Buckley v. Fitzsimmons*, 509 U.S. 259, 266–68, 113 S.Ct. 2606, 2612, 125 L.Ed.2d 209 (1993). Section 1983 admits of no defense of official immunity; however, the United States Supreme Court has consistently recognized that § 1983 was not meant "to abolish wholesale all common-law immunities." See *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). Instead, § 1983 is to be read "in harmony with

**14.** Mississippi Code Annotated § 73-15-9 provides that "[t]here is hereby created a board to be known as the Mississippi Board of Nursing, composed of thirteen (13) members, two (2) of whom shall be nurse educators; three (3) of whom shall be registered nurses in clinical practice, two (2) to have as basic nursing preparation an associate degree or diploma and one (1) to have as basic nursing preparation a baccalaureate degree; one (1) of whom shall be a registered nurse at large; one (1) of whom shall be a registered nurse practitioner; four (4) of whom shall be licensed practical nurses; one (1) of whom shall be a licensed physician who shall always be a member of the State Board of Medical Licensure; and one (1) of whom shall represent consumers of health services. There shall be at least one (1) board member from each congressional district in the state; provided, however, that the physician member, the consumer representative member and one (1) registered nurse member shall be at large always."

**15.** Mississippi Code Annotated § 73-15-17, at (c), (d) and (e), provides that "[t]he Mississippi Board of Nursing is hereby authorized and empowered to:

(c) Issue subpoenas, require attendance of witnesses, and administer oaths of persons giving testimony.

(d) Cause the prosecution of all persons violating the provisions of this chapter, and incur such necessary expenses therefor ... and

(e) Conduct hearings upon charges calling for discipline of a licensee or revocation of a license."

**16.** Mississippi Code Annotated § 73-15-31(9) provides in pertinent part that "[t]he right to appeal from the action of the board in denying, revoking, suspending or refusing to renew any license issued by the board, or fining or otherwise disciplining any person practicing as a registered nurse or a licensed practical nurse, is hereby granted. Such appeal shall be to the chancery court of the county of the residence of the licensee on the record made, including a verbatim transcript of the testimony at the hearing.... If the action of the board in denying, revoking, suspending or refusing to renew the license, or fining or otherwise disciplining the person, be affirmed by the chancery court ... [a]ppeals may be had to the Supreme Court of the State of Mississippi as provided by law from any final action of the chancery court...."

**17.** Mississippi Code Annotated § 73-15-9(3) provides that "[m]embers of the board shall be appointed in staggered terms for four (4) years or until a successor shall be duly qualified. No member may serve more than two (2) consecutive full terms. Members of the board serving on July 1, 1988, shall continue to serve for their appointed terms."

general principles of tort immunities and defenses rather than in derogation of them." *See Imbler v. Pachtman,* 424 U.S. 409, 418, 96 S.Ct. 984, 989, 47 L.Ed.2d 128 (1976) (the seminal case setting forth absolute prosecutorial immunity). Additionally, the United States Supreme Court has acknowledged that for some "special functions" it is better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. *See Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), citing *Butz v. Economou,* 438 U.S. at 506–08, 98 S.Ct. at 2911, and *Imbler,* 424 U.S. at 428–30, 96 S.Ct. at 994.

█ In determining whether particular actions of government officials fit within a common–law tradition of absolute immunity, or only the more general standard of qualified immunity, the Supreme Court has applied a "functional approach" which looks to the nature of the function performed, not the identity of the actor who performed it. See *Burns,* 500 U.S. at 485–87, 111 S.Ct. at 1939 (citing all cases which have employed the functional approach set forth in *Imbler*); *Forrester v. White,* 484 U.S. 219, 228–30, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988) (denying absolute immunity to a judge sued for a non–judicial act); and *Ex parte Virginia,* 100 U.S. 339, 348, 25 L.Ed. 676 (1879) ("[w]hether the act done by [a judge] was judicial or not is to be determined by its character, and not by the character of the agent").

█ Under the functional approach, it is the proponent of a claim to absolute immunity who bears the burden of establishing the justification for such immunity. *See Antoine v. Byers & Anderson,* 508 U.S. 429, 430–34, 113 S.Ct. 2167, 2169–70, 124 L.Ed.2d 391 (1993), citing *Burns,* 500 U.S. at 485–87, 111 S.Ct. at 1939. "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the particular function in question. The Supreme Court's presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties, and the Court has been sparing in its recognition of absolute immunity, refusing to

extend it any farther than its justification would warrant." *Id.*

█ To meet the burden of proof for establishing a claim to the defense of absolute immunity, an official seeking such immunity must show that a "counterpart to the privilege he asserts" was recognized at common law in 1871, the year the Civil Rights Act was enacted. Where the Supreme Court has found that a tradition of absolute immunity did not exist as of 1871, it has refused to grant such immunity under § 1983. *See Malley v. Briggs,* 475 U.S. 335, 338–40, 106 S.Ct. 1092, 1095, 89 L.Ed.2d 271 (1986), citing *Tower v. Glover,* 467 U.S. 914, 920–22, 104 S.Ct. 2820, 2825, 81 L.Ed.2d 758 (1984). However, the Supreme Court also has recognized that some officials perform "special functions" which, because of their similarity to functions which would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability. *Buckley v. Fitzsimmons,* 509 U.S. at 268–69, 113 S.Ct. at 2613, citing *Butz v. Economou,* 438 U.S. at 506–08, 98 S.Ct. at 2911. While the Supreme Court often has addressed in the federal context whether absolute immunity applies, the Court noted in *Butz* that there was no basis for according federal officials any higher degree of immunity than state officials for violations of § 1983. *Id.,* 438 U.S. at 498–500, 98 S.Ct. at 2907 (holding that employees of the Department of Agriculture engaging in adjudicatory roles were entitled to absolute immunity from damages liability).

The Fifth Circuit has found many circumstances where the responsibilities of state officials are functionally comparable to those of a judge and are absolutely immune from liability. *See Hulsey v. Owens,* 63 F.3d 354 (5th Cir.1995) (parole board director and general counsel entitled to absolute immunity); *Mylett v. Mullican,* 992 F.2d 1347 (5th Cir.1993), *cert. denied* 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993) (members of the Civil Service Commission when conducting termination hearings); *Johnson v. Kegans,* 870 F.2d 992 (5th Cir.1989) (probation officer giving sentencing information to the court); *Austin Municipal Securities v. National Association of Securities,* 757 F.2d 676 (5th

Cir.1985) (association of securities dealers and its disciplinary officers); *Slavin v. Curry*, 574 F.2d 1256 (5th Cir.1978), *modified on other grounds*, 583 F.2d 779 (5th Cir.1978), *rev'd sub nom. on other grounds, Sparks v. Duval County Ranch Company*, 604 F.2d 976 (5th Cir.1979) (bar association disciplinary committee members have absolute immunity); and *Cruz v. Skelton*, 502 F.2d 1101 (5th Cir.1974) (members of pardon and parole boards).

Most recently, this court had the occasion to find the Mississippi Board of Nursing entitled to absolute immunity. In *Irene O'Neal, et al. v. Mississippi Board of Nursing, et al.*, Civil Action No. 3:96–cv–97LN (decided April 19, 1996),[18] the Honorable Tom S. Lee rejected the plaintiff's argument that the Board was entitled only to qualified immunity, stating that, "[p]ublic officials are entitled to absolute quasi–judicial immunity when they engage in acts which are judicial in nature." Judge Lee relied on *Mylett v. Mullican*, 992 F.2d at 1352, noting that determining whether an official's duties are judicial in nature requires the examination of several factors, to include: (a) the need to assure that the defendant can perform his functions without threat of intimidation or harassment; (b) the presence of safeguards that reduce the need for private damages as a means of controlling constitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal. *Id.*, at 1353, citing *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

### HOLDING

The Mississippi Board of Nursing did not exist in 1871; thus, the Board does not meet the first test which requires a history of common–law or traditional immunity associated with a defendant prior to 1871. Ordinarily, this would preclude the Board's claim of entitlement to the defense of absolute immunity. *See Tower v. Glover*, 467 U.S. at 920–22, 104 S.Ct. at 2825. However, the second test which nevertheless may bring a defendant within the ambit of an absolute immunity defense is whether that defendant engages in actions comparable to an adjudicatory or judicial role. As earlier noted, the Supreme Court, where it recognizes that the officials in question perform special functions such as judicial functions, will find a defendant entitled to claim the defense of absolute immunity from damages liability under § 1983. *Buckley v. Fitzsimmons*, 509 U.S. at 268–69, 113 S.Ct. at 2613.

This court finds that the Board in the instant case is imbued with powers comparable to those of judges and engages in many adjudicatory functions, among them the determination of fact questions, following the procedural trappings logically associated with a common–law finder of fact. For instance, the Board is empowered by the relevant statutes to compel and hear testimony, administer oaths, issue subpoenas, and compel the production of any records, including, but not limited to, hospital and physician's records, papers and other documents. The Board also conducts hearings and renders written opinions which are subject to the safeguard of appellate review—ultimately by the Mississippi Supreme Court. Any errors committed by the Board, being reviewable, may be corrected at the appellate level. Those summoned to appear before the Board may be represented by counsel, thereby insuring that the hearing process is adversarial. Moreover, the Board members do not have to worry about their decisions being reviewed by the Governor who appointed them since, by virtue of their four–year terms of office, Board members are independent of political influence and constrained in detail by their enabling statutes. *See Mylett v. Mullican*, 992 F.2d. at 1353 (basing the application of absolute immunity in part upon the independence of civil service commissioners from political influence).

In the instant case, the plaintiff cannot be heard to contend that he was not afforded the constitutional protections to which he is entitled. The hearings in question gave the plaintiff the opportunity to be represented by counsel, notwithstanding the denial of a continuance of the second hearing. Evidence

---

**18.** This case is currently on appeal to the United States Court of Appeals for the Fifth Circuit.

was presented and witnesses gave testimony. The plaintiff had the opportunity to cross–examine the witnesses against him. Moreover, errors deemed committed by the Board were corrected on appeal—twice. The appellate safeguards worked and the plaintiff's license was reinstated.

The only case authority relied upon by the plaintiff in support of his contention that absolute immunity should not be applied is the case of *Wood v. Strickland.* The defendants respond that *Wood v. Strickland* was a pre–*Butz v. Economou* case which was decided before the Supreme Court developed the functional analysis now employed to determine whether absolute immunity should be permitted. Moreover, say defendants, the Supreme Court limited its decision in *Wood v. Strickland* to the circumstances of a school board member "in the specific context of school discipline." *See Harlow v. Fitzgerald,* 457 U.S. at 815, 102 S.Ct. at 2737, quoting *Wood v. Strickland,* 420 U.S. at 322–24, 95 S.Ct. at 1001. This court finds an additional basis for distinguishing *Wood v. Strickland.* The Supreme Court there found that despite the adjudicative function of the school board members, "absolute immunity would not be justified since it would not sufficiently increase the ability of school officials to exercise their discretion in a forthright manner to warrant the absence of a remedy for students subjected to intentional or otherwise inexcusable deprivations [of their constitutional rights]." *Id.,* 420 U.S. at 320, 95 S.Ct. at 1000. In other words, because the school board's disciplinary process in *Wood v. Strickland* offered no avenue of review or appeal for a student who might intentionally be deprived of a constitutional right due to malicious school board action, the Supreme Court found qualified immunity to be the more appropriate standard since absolute immunity would preclude all scrutiny of the school board's decisions in the courts and would not encourage school board members to act in a forthright manner. Thus, *Wood v. Strickland* is distinguishable from the facts of the instant case inasmuch as the decisions of the Mississippi Board of Nursing are subject to judicial review.

Finally, the plaintiff argues that Miss. Code Ann. § 73–15–31(11) which provides that "[a]ny member of the board and any witness appearing before the board shall be immune from suit in any civil action brought by a licensee who is the subject of a review hearing if such member or witness acts in good faith within the scope of the board and has made a reasonable effort to obtain the facts of the matter as to which the individual acts, and acts in the reasonable belief that the action taken is warranted by the facts," grants Board members only qualified immunity, not absolute immunity. Plaintiff suggests that by granting absolute immunity, this court would grant public officials in Mississippi greater protection from suit under § 1983 than they are accorded by state law. However, even assuming that plaintiff is correct that under state law the Board of Nursing only enjoys qualified immunity, plaintiff's reliance on the statutory immunity Mississippi accords its Board members is misplaced. Inasmuch as § 1983 is a federal statute, which creates a federal cause of action for constitutional violations committed under color of state law, the immunities enjoyed by state officials sued under § 1983 are governed by federal law. *Briggs v. Goodwin,* 569 F.2d 10, 17, n. 8 (D.C.Cir.1977). Recently, the United States Court of Appeals for the Fifth Circuit held that "it is federal immunity law which shields state officials from personal liability under federal law for civil damages." *Cantu v. Rocha,* 77 F.3d 795, 805 (5th Cir.1996) (section 1983 lawsuit applying federal qualified immunity principles set forth in *Anderson v. Creighton,* 483 U.S. 635, 639–41, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), and *Harlow v. Fitzgerald,* 457 U.S. at 817–19, 102 S.Ct. at 2738, rather than the "within scope of official's authority" qualified immunity offered under Texas law). *See also Jaeger v. Dubuque County,* 880 F.Supp. 640, 649 (N.D.Iowa 1995) (federal law, not state law, whether statutory or common, is controlling as to claims of immunity from lawsuits brought under § 1983). *Jaeger* relies in part on *Howlett v. Rose,* 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990), which holds that states may not apply their own immunity statutes to bar § 1983 claims against state officials; and on *Owen v. City of Indepen-*

dence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (a municipality's common–law immunities are inapplicable to § 1983 claims). Additionally, many state appellate courts confronted with lawsuits filed in lower courts pursuant to § 1983 hold that federal law controls the immunity analysis with regard to any defendant's assertion of immunity from a § 1983 claim. *See Martinez v. California*, 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980) (affirming California Court of Appeal's holding that federal law governed the question of immunity from a § 1983 claim); *Bartlett v. Cinemark USA, Inc.*, 908 S.W.2d 229, 234 (Tex.App.–Dallas 1995) (where lawsuit filed under § 1983, federal law controls the question of immunity; and absolute immunity applies where the official's function is judicial in nature); *Ambus v. Utah State Board of Education*, 858 P.2d 1372, 1376 (Utah 1993) (the issue of immunity in a federal civil rights case is a matter of federal law); *Dinsdale v. Commonwealth of Massachusetts, et al*, 424 Mass. 176, 675 N.E.2d 374 (1997) (applying federal law immunity analysis to § 1983 claim and state law immunity analysis to state tort claims); and *Boreen v. Christensen*, 280 Mont. 378, 930 P.2d 67 (Mont.1996) (§ 1983 is a federal remedy and immunity is a matter of federal law), citing *Finch v. Wemlinger*, 310 N.W.2d 66, 69–70 (Minn. 1981); and *Cooperman v. University Surgical Associates, Inc.*, 32 Ohio St.3d 191, 198–99, 513 N.E.2d 288, 296 (1987). Thus, inasmuch as federal law governs the immunity to be enjoyed by state officials sued under § 1983, and the United States Supreme Court decisions find absolute immunity where state officials act in clearly adjudicatory roles, *see Buckley v. Fitzsimmons*, 509 U.S. at 268–69, 113 S.Ct. at 2613, citing *Butz v. Economou*, 438 U.S. at 506–08, 98 S.Ct. at 2911, then the defendants in the instant case are entitled to absolute immunity, regardless of the immunities accorded public officials under state law.

Therefore, for all the foregoing reasons, this court finds that the individually named defendants in the above–styled and numbered cause are entitled to absolute immunity from damages liability under Title 42 U.S.C. § 1983. This court's decision is ad-dressed only to the immunity enjoyed by the Mississippi Board of Nursing from damages liability under § 1983 for actions taken in its adjudicatory role. This decision is in no way to be construed as applying to any administrative duties or actions of the Board.

THEREFORE, this court, finding that the plaintiff's § 1983 claims against the defendants in their official capacities are barred by the doctrine of absolute immunity and by the Eleventh Amendment to the United States Constitution, finding that the individually named defendants as member of the Mississippi Board of Nursing are entitled to absolute immunity from damages liability under § 1983, hereby grants the defendants, summary judgment motion and dismisses the above–styled and numbered cause. This court will enter a separate judgment in accordance with the local rules.

**SO ORDERED AND ADJUDGED.**